This is an appeal from a Hocking County Municipal Court judgment of conviction and sentence. Robert Stevens, defendant below and appellant herein, entered no contest pleas to the following offenses: (1) driving while under the influence of alcohol, in violation of R.C. 4511.19 (A) (1); (2) driving while under suspension, in violation of R.C. 4507.02 (D); (3) failure to wear a safety belt, in violation of R.C. 4513.263; (4) driving left of center, in violation of R.C. 4511.30.
Appellant raises the following assignment of error for review:
 "DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT REFUSED TO SUPPRESS ALL EVIDENCE BECAUSE DEFENDANT WAS STOPPED WITHOUT A REASONABLE, ARTICULABLE SUSPICION OF WRONGDOING IN THE FIRST INSTANCE?"
Our review of the record reveals the following facts pertinent to the instant appeal. On May 8, 1999, at approximately 1:00 a.m., Ohio State Highway Patrol Trooper Ross Thompson, while traveling eastbound on State Route 56, a two-lane road divided by a double-yellow line, noticed appellant's vehicle approaching from the west. Thompson stated that when he first observed appellant's vehicle, the vehicle was straddling the centerline and the headlights were on the westbound side of the road. Trooper Thompson decided to follow appellant.
Shortly thereafter, Trooper Thompson observed the vehicle's left tires on the yellow center line. The trooper stated that part of appellant's vehicle extended over the center line and onto the left (other) side of the road. At that point, Trooper Thompson stopped appellant.
Upon contact with appellant, Trooper Thompson noticed an alcoholic odor emanating from the vehicle. Appellant subsequently was charged with operating a motor vehicle while under the influence, driving while under suspension, failure to wear a safety belt, and driving left of center.
On July 14, 1999, appellant filed a motion to suppress all evidence stemming from the May 8, 1999 traffic stop. Appellant argued, inter alia, that the arresting officer lacked any reasonable suspicion of criminal activity to conduct the traffic stop.
After conducting a hearing regarding appellant's motion to suppress evidence, the trial court, on August 23, 1999, overruled appellant's motion. Appellant subsequently pleaded no contest to the four charges. Appellant filed a timely notice of appeal. In his sole assignment of error, appellant contends that the trial court erred by overruling his motion to suppress. In particular, appellant argues that the trial court should have suppressed the evidence obtained after the traffic stop because the stop violated appellant's Fourth Amendment right to be free from unreasonable seizures. Appellant contends that Trooper Thompson failed to articulate specific facts demonstrating that the trooper possessed a reasonable suspicion of criminal activity to stop appellant's vehicle. Appellant asserts that the officer did not observe appellant commit any traffic violations or engage in erratic driving that would justify a traffic stop.
The state asserts that the trial court correctly determined that Trooper Thompson observed appellant commit a left-of-center traffic violation and, thus, the trooper possessed a reasonable, articulable suspicion of criminal activity to stop appellant's vehicle. We agree with the state.
We initially note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Long (1998), 127 Ohio App.3d 328,332, 713 N.E.2d 1, 3. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Fanning
(1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584; State v. Dunlap
(1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, 995. Accordingly, a reviewing court must defer to the trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See Long, supra; State v. Medcalf (1996),111 Ohio App.3d 142, 675 N.E.2d 1268; Dunlap, supra. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v.Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; State v.Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11, unreported. See, generally, Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657, 134 L.Ed.2d 911.
The Fourth and Fourteenth Amendments to the United States Constitution,[1] as well as Section 14, Article I of the Ohio Constitution,[2] protect individuals against unreasonable governmental searches and seizures. Delaware v. Prouse (1979)440 U.S. 648, 662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660; State v.Gullett (1992), 78 Ohio App.3d 138, 143, 604 N.E.2d 176, 179. InKatz v. United States, the Supreme Court held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under theFourth Amendment — subject only to a few specifically established and well-delineated exceptions." Id., (1967), 389 U.S. 347, 357,88 S.Ct. 507, 514, 19 L.Ed.2d 576; see, also, State v. Sneed (1992),63 Ohio St.3d 3, 6-7, 584 N.E.2d 1160, 1165; State v. Braxton
(1995), 102 Ohio App.3d 28, 36, 656 N.E.2d 970, 975.
A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment. Whren v. United States (1996),517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89. Such a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. In Whren, the Supreme Court recognized that the Fourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation. Id. The court stated:
 "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizures of `persons' within the meaning of [the Fourth Amendment]. * * * An automobile stop is thus subject to the constitutional imperative that it not be `unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. * * *."
Id., 517 U.S. at 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89
(citations omitted); see, also Dayton v. Erickson (1996), 76 Ohio St.3d 3,11-12, 665 N.E.2d 1091, 1097-1098.
In the absence of probable cause to believe that the driver of a vehicle has committed a traffic violation, a law enforcement officer generally may not stop the vehicle unless the officer observes facts giving rise to a reasonable suspicion of criminal activity. See, generally, Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889; State v. Andrews (1991), 57 Ohio St.3d 86,565 N.E.2d 1271; State v. Venham (1994), 96 Ohio App.3d 649,654, 645 N.E.2d 831, 833. To justify a traffic stop based upon less than probable cause, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime, including a minor traffic violation.[3] See Erickson, 76 Ohio St.3d 3, 11-12,665 N.E.2d 1091, 1097-1098; Prouse, supra; Terry, supra.
Based upon the foregoing well-established principles of law, we conclude that Trooper Thompson's initial stop of appellant complied with the Fourth Amendment. Trooper Thompson stated, and the trial court found, that appellant's vehicle crossed the yellow center line on at least two occasions. Appellant's act in driving left of the center line is itself a violation of the law and provides both the probable cause and the reasonable suspicion necessary to effectuate a valid traffic stop. See Whren, supra;Erickson, supra; see, also, R.C. 4511.25 and 45ll.30[4]
(generally prohibiting vehicles from driving on the left side of the road); Zehe v. Falkner (1971), 26 Ohio St.2d 258,271 N.E.2d 276, paragraph one of the syllabus (stating that "R.C. 4511.25 * * * impose[s] a mandatory duty upon a motorist to drive solely upon the right half of a roadway except under specifically designated circumstances"); McComb v. Andrews (Mar. 22, 2000), Hancock App. No. 5-99-41, unreported (investigative traffic stop permitted when officer observed vehicle's left tires cross the centerline) State v. Strausbaugh (Dec. 3, 1999), Montgomery App. No. 17629, unreported (investigative traffic stop permitted when officer observed defendant change lanes without signaling and drifted "just a little over" the yellow center line); State v.Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11 (noting that traveling left of the center line is a traffic violation that justifies a traffic stop); State v. Ward (Mar. 12, 1999), Darke App. No. 1472, unreported (crossing into opposite lane of travel justifies a traffic stop); State v. Strassman (Nov. 20, 1998), Athens App. No. 98 CA 10, unreported (driving left of the center line justifies a traffic stop); State v. Siebert (Mar. 16, 1998), Warren App. No. CA97-07-079, unreported (straddling the dividing line between the right lane and the berm constitutes a failure to drive in marked lanes in violation of R.C. 4511.33 and justifies a traffic stop); State v. Matlack (Nov. 2, 1995), Athens App. No. 95 CA 1658, unreported ("Traveling left of center is a traffic violation by itself."). As the court stated in State v. Kuno
(Nov. 6, 1997), Franklin App. No. 97 APC04-497, unreported:
 [W]hen a police officer observes a vehicle driving left of the centerline, that officer has witnessed what appears to be a violation of the law. As such, an officer would have a reasonable, articulable suspicion that a violation had occurred, i.e., that the driver improperly drove left of center, and would be in a position to stop that vehicle."
Appellant cites several cases in support of his proposition that Trooper Thompson's stop of his vehicle violated theFourth Amendment. We find each case distinguishable from the case at bar.[5] In State v. Brite (June 23, 1997), Athens App. No. 96 CA 1778, unreported, the defendant's vehicle did not cross the yellow center line which divides opposite lanes of traffic. Rather, the defendant's vehicle passed across the right-hand edge of the road twice within a mile. Further, the distance by which the defendant's vehicle traveled across the line was not precisely specified. We held that "these two instances of crossing the right-hand edge line of the road, without more, were insufficient to justify a stop of the vehicle." Moreover, we note that Brite discussed whether crossing the right-hand edgeline could give rise to a reasonable suspicion that the driver was driving under the influence, not whether such conduct could provide probable cause or reasonable suspicion that the driver had committed a traffic violation. In the case at bar, the officer stopped appellant based upon the fact that he had committed a traffic offense, i.e. crossing the yellow center line, and not based upon a reasonable suspicion that appellant was driving while under the influence of alcohol. See, also,State v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.
In State v. Glasscock (1996), 111 Ohio App.3d 371,676 N.E.2d 179, the officer observed defendant's vehicle traveling on a four-lane divided highway. As the officer followed the defendant, the officer noticed the vehicle's left front and rear tires cross the line dividing the two westbound lanes. The officer also noticed the vehicle's right tires "ride but not cross the right- edge line." The Glasscock court concluded that minor deviations, such as briefly crossing lines that divide traffic traveling in the same direction of travel, do not give rise to a reasonable suspicion that the driver is under the influence of alcohol.
Similarly, in State v. Johnson (1995), 105 Ohio App.3d 37,663 N.E.2d 675, the officer noticed the defendant's vehicle cross the right edgeline on the roadway and return to the lane of travel on two separate occasions. The appellate court held that the minor deviations in the path of the defendant's vehicle did not give rise to a reasonable suspicion that the defendant was driving while under the influence of alcohol.
Likewise, in State v. Pennington (June 30, 1999) Wood App. No. WD-98-086, unreported, the issue revolved around whether the officer possessed reasonable suspicion that the defendant had been driving while under the influence, not whether the defendant had committed a traffic violation. In Pennington, the officer observed the defendant's vehicle touching, but not crossing, the center line several times. The Pennington court held that the driver's conduct gave the officer reasonable suspicion of criminal activity, i.e., driving under the influence, to stop the defendant.
In State v. Matlack (Nov. 2, 1995), Athens App. No. 95 CA 1658, unreported, we distinguished Gullett, supra, and State v.Drogi (1994), 96 Ohio App.3d 466, 645 N.E.2d 153, as follows:
 "In Gullett, we held that the officer did not state sufficient articulable facts to justify an investigative stop where the driver crossed the right edge line twice over a distance of one and one-half miles. The record in Gullett did not show how far or for what length of time the driver crossed the edge line, and there was no other evidence of erratic driving. Although the state charged Gullett
under R.C. 4511.19, the statute involved for the initial stop was R.C. 4511.33 (improper lane change). R.C. 4511.33 provides that `[a] vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane * * *.' Clearly, `as nearly as is practicable' means there can be exceptions. Gullett also involved a right turn. R.C. 4511.36
requires a right turn to be made as close as practical to the right-hand edge of the roadway. Based on the totality of these circumstances, the improper lane change violation in Gullett `was not properly factually developed by the arresting officer.' State v. Faulkner (Jan. 15, 1994), Lawrence App. No. 93 CA 12, unreported, at 5.
 The Drogi court dealt with similar facts except that the driver crossed one foot over the centerline and then crossed the right edgeline. The road was a four-lane divided interstate highway. The centerline involved divided two lanes of traffic heading in the same direction. The Drogi court held that the officer did not have reasonable suspicion to make the investigative stop.
 Contrary to the trial court's conclusion, the facts of the case sub judice do not fit within the parameters of Drogi or Gullett. It is undisputed that appellee's vehicle crossed the centerline three times. The double yellow center lines divided the opposite lanes of travel. Appellee's vehicle did not cross a right edgeline or a centerline dividing two lanes of traffic heading the same way. Traveling left of center is a traffic violation by itself."
(footnote omitted) (emphasis added)
Unlike Glasscock, Johnson, and Brite, in the case at bar Trooper Thompson stopped appellant's vehicle because appellant committed a traffic violation. Thus, the instant case, involving a left of center violation, falls within the parameters ofMatlack. Moreover, unlike Drogi, the case sub judice does not involve a failure to stay within marked lanes of travel that is moving in the same direction.
Appellant further appears to assert that: (1) "technical" traffic violations do not sufficiently give rise to reasonable suspicion, much less probable cause, to stop a vehicle; (2) one traffic violation does not permit an officer to stop a vehicle; (3) momentary "bobbling" does not permit a traffic stop; and (4) simply riding on the line does not permit a traffic stop. AsErickson and Whren clearly state, however, the observance of traffic violations, even minor violations, justifies a traffic stop and fulfills the Fourth Amendment's reasonableness requirement.
We note, however, that in the instant case the trial court found that appellant's vehicle crossed the double yellow line dividing opposite lanes of travel, a violation of the traffic laws. The trial court did not find, and the record does not support a finding, that appellant's conduct in driving his vehicle constituted a momentary "bobble" or that appellant merely drove his vehicle "on the line." We, as a reviewing court, must defer to the trial court's factual findings. See Dunlap, supra.
Appellant also argues that the "public policy `emergency exception'" did not permit the traffic stop. Appellant did not, however, raise this issue during the trial court proceedings, and has, therefore, waived the issue for purposes of appeal. Consequently, we will not address the argument.
Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee shall recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Evans, J.: Concur in Judgment Opinion
_________________________ Peter B. Abele Judge
[1] The Fourth Amendment to the United States Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[2] Section 14, Article I of the Ohio Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized.
[3] We recognize that the traffic stop cases can, depending upon the facts in the particular case, implicate either the probable cause standard or the reasonable suspicion standard. Some courts, citing Whren, hold that a traffic stop is constitutionally permissible when an officer possesses probable cause that the driver of the vehicle has committed a traffic violation. See, e.g., State v. Bolding (May 28, 1999), Erie App. No. E-97-115, unreported; State v. Barr (Mar. 21, 1997). Other courts have held that the standard by which to judge the constitutionality of a traffic stop is not probable cause, but rather is the reasonable suspicion of criminal activity. See, State v. Lloyd (1998), 126 Ohio App.3d 95, 709 N.E.2d 913; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11, unreported; State v. Carter (June 14, 2000), Belmont App. No. 99 BA 7, unreported. We note that the particular standard to be applied will depend upon the unique facts in each case. If an officer does, in fact, observe a traffic violation, the probable cause standard has been satisfied. A valid traffic stop does not, however, always require that an officer possessed probable cause that a traffic violation or other criminal violation has occurred. The reasonable suspicion standard or Terry standard, i.e. the officer has a reasonable, articulable suspicion that criminal activity is afoot, may provide an adequate constitutional justification for a traffic stop. For example, if an officer observes erratic driving (i.e. weaving within one's own lane), but that conduct falls short of an actual traffic violation, the officer may still have valid constitutional authority to conduct an investigative stop.
[4] R.C. 4511.25 provides:
 (A) Upon all roadways of sufficient width, a vehicle or trackless trolley shall be driven upon the right half of the roadway, except as follows:
 (1) When overtaking and passing another vehicle proceeding in the same direction, or when making a left turn under the rules governing such movements;
 (2) When an obstruction exists making it necessary to drive to the left of the center of the highway, provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;
 (3) When driving upon a roadway divided into three or more marked lanes for traffic under the rules applicable thereon;
 (4) When driving upon a roadway designated and posted with signs for one-way traffic;
 (5) When otherwise directed by a police officer or traffic control device.
R.C. 4511.30 provides as follows:
 No vehicle or trackless trolley shall be driven upon the left side of the roadway under the following conditions:
 (A) When approaching the crest of a grade or upon a curve in the highway, where the operator's view is obstructed within such a distance as to create a hazard in the event traffic might approach from the opposite direction;
 (B) When the view is obstructed upon approaching within one hundred feet of any bridge, viaduct, or tunnel;
 (C) When approaching within one hundred feet of or traversing any intersection or railroad crossing.
 This section does not apply to vehicles or trackless trolleys upon a one-way roadway, upon a roadway where traffic is lawfully directed to be driven to the left side, or under the conditions described in division (A) (2) of section 4511.25 of the Revised Code.
[5] Additionally, we note that at least one of the cases appellant cites has been explicitly overruled. See State v. Wilhelm (1998), 81 Ohio St.3d 444, 692 N.E.2d 181 (reversing State v. Wilhelm (Apr. 14, 1997), Butler App. No. CA 96-12-272, unreported, on authority of Erickson, supra).