THE STATE OF OHIO, APPELLEE, *v.* DUNLAP, APPELLANT.

[Cite as *State v. Dunlap* (1995), 73 Ohio St.3d 308.]

(No. 94–1777—Submitted June 6, 1995—Decided August 23, 1995.)

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for appellee.

*Elizabeth E. Agar,* for appellant.

PFEIFER, J. Dunlap presents fifteen propositions of law for our consideration. We have considered Dunlap's propositions of law, independently weighed the statutory aggravating circumstances against the evidence presented in mitigation, and reviewed the death penalty for appropriateness and proportionality. Upon review, and for the reasons which follow, we affirm the judgment of the court of appeals.

.I.  Admission of Confession

In his twelfth proposition of law, Dunlap argues the trial court erred in failing to suppress his pretrial statements to the police.  At a pretrial hearing, Dunlap testified that Idaho police officers manhandled and threatened him when they arrested him.  He claimed he waived his *Miranda* rights "out of fear of what might happen" because "they were going to hurt me if I didn't say it was me." Dunlap also claimed that he requested counsel several times before interrogation, but the police ignored those requests.  Dunlap admitted he signed waivers of rights and submitted to interviews on October 16, 17 and 19.

Of course, if Dunlap did request counsel, and police ignored the request and continued questioning him, his statements would be inadmissible.  When counsel is requested, interrogation must cease until a lawyer is provided or the suspect reinitiates the interrogation.  *Arizona v. Roberson* (1988), 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704; *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378.

However, the record of the suppression hearing supports a finding that Dunlap voluntarily waived his rights and never requested to consult counsel before agreeing to be interviewed by police or while being interviewed.  The October 16 interview was videotaped, and the interviews on October 17 and 19 were audiotaped.  The tapes show that during hours of interviews, police readvised or reminded Dunlap of his rights several times, and he signed two separate waivers of rights.  At no time during these taped interviews did appellant decline to answer questions or ask to consult a lawyer before answering questions.  The police never threatened appellant or promised him anything to secure his cooperation.  On October 19, appellant freely talked with Cincinnati police officers after again waiving his *Miranda* rights.

Admittedly, at one point during the taping of Dunlap's October 17 statement, the police chief briefly referred to the fact that the interview had been interrupted so Dunlap could sign "a document for the Court."  That document "has to do with appointing an attorney, which you [Dunlap] do not have enough funds for."

However, the context makes it clear that this request concerned the appointment of counsel for future court hearings.  Dunlap did not ask to consult with a lawyer before answering questions nor did he ask for a lawyer to be present during any interviews.  "The rationale underlying *Edwards* is that the police must respect a suspect's wishes regarding his right to have an attorney present during custodial interrogation."  *Davis v. United States* (1994), 512 U.S. ——, ——, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362, 372.  As *Davis* held, "the suspect must unambiguously request counsel."  *Id.* at ——, 114 S.Ct. at 2355, 129 L.Ed.2d at 371.  Dunlap made no unambiguous request to consult counsel.  See *Connecticut v. Barrett* (1987), 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920;

*United States v. Mills* (C.A.6, 1993), 1 F.3d 414. Instead, he simply took a short break to sign a document to allow the Idaho court to appoint him an attorney to represent him in future court proceedings. Thereafter, Dunlap resumed the interview with the police chief that Dunlap had himself initiated.

Moreover, that break in appellant's taped October 17 confession occurred relatively late in the course of that interview—two thirds of the way through, in fact. After that point in the interview, the police chief and Dunlap mostly discussed the Idaho robbery, not the Ohio murder. Since abundant other evidence established appellant's guilt of that second "course of conduct" murder, admitting the last portion of appellant's October 17 confession or even his October 19 statement, even if error, was harmless beyond a reasonable doubt.

"[T]he weight of the evidence and credibility of witnesses are primarily for the trier of the facts. * * * This principle is applicable to suppression hearings as well as trials." *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 58, 437 N.E.2d 583, 584. Accord *State v. DePew* (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542, 547.

The trial court's decision to admit the statements rests upon substantial evidence. We find no basis to reverse the trial court's decision and reject the interview tapes and police officers' testimony in favor of Dunlap's claims. We reject Dunlap's twelfth proposition.

## II. Multiple Charges and Specifications

In his first proposition of law, Dunlap correctly argues that the trial court erred by submitting two charges of aggravated murder to the jury for separate penalty determinations and in imposing two death sentences. Since both charges "involve the same victim, they merge." *State v. Lawson* (1992), 64 Ohio St.3d 336, 351, 595 N.E.2d 902, 913; *State v. Huertas* (1990), 51 Ohio St.3d 22, 28, 553 N.E.2d 1058, 1066.

However, we find this error harmless beyond a reasonable doubt. *State v. Cook* (1992), 65 Ohio St.3d 516, 526–527, 605 N.E.2d 70, 82; *State v. Brown* (1988), 38 Ohio St.3d 305, 317–318, 528 N.E.2d 523, 538–539. Moreover, the court of appeals explicitly merged the two murder counts and approved only a single death sentence. Accordingly, we recognize that only a single death sentence remains, but otherwise reject Dunlap's first proposition.

In his second proposition of law, Dunlap argues that the trial court's submission to the jury of the R.C. 2929.04(A)(7), felony-murder death specification, in counts I and II, prejudiced his rights to a fair sentencing determination. Dunlap argues the specifications and instructions improperly multiplied the felony-murder aggravating circumstance into two aggravating circumstances as pro-

scribed in *State v. Penix* (1987), 32 Ohio St.3d 369, 370–372, 513 N.E.2d 744, 746–747.

As *Penix* notes, 32 Ohio St.3d at 371, 513 N.E.2d at 746, "[p]rior calculation and design is an aggravating circumstance only in the case of an offender who did not personally kill the victim." In this case, the sentencing instructions referred to whether "the offense of aggravated murder was committed while the defendant was committing aggravated robbery *or was committed with prior calculation and design* * * *." (Emphasis added.) By so doing, the instructions incorrectly described the aggravating circumstance. However, unlike the court in *Penix*, the court here did not multiply a single felony murder specification into two aggravating circumstances. The jury's findings of guilt, as well as the specifications in the indictment, correctly stated this aggravating circumstance. Dunlap did not object to the instruction. We find no plain error and reject Dunlap's second proposition. See, also, *State v. Cook*, 65 Ohio St.3d at 527, 605 N.E.2d at 82.

## III. Exclusion of Jurors

In his third proposition, Dunlap argues that excluding jurors who could not vote for the death penalty violated his right to a jury composed of a fair cross-section of the community. However, death-qualifying a jury "does not deny a capital defendant a trial by an impartial jury." *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph two of the syllabus; *Lockhart v. McCree* (1986), 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137. Here, the record demonstrates those excluded held views which "would prevent or substantially impair the performance" of duties in accordance with the juror's "instructions and oath." *State v. Rogers* (1985), 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984, paragraph three of the syllabus, following *Wainwright v. Witt* (1985), 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841. Thus, Dunlap's third proposition lacks merit. *State v. Tyler* (1990), 50 Ohio St.3d 24, 30, 553 N.E.2d 576, 586.

## IV. Mercy Instruction

In his fourth proposition, Dunlap argues the trial court erred in its penalty phase instructions by not allowing the jury to consider sympathy and by failing to instruct on mercy. However, the court properly instructed the jury to exclude sympathy. *State v. Jenkins*, 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph three of the syllabus; *State v. Steffen* (1987), 31 Ohio St.3d 111, 125, 31 OBR 273, 285, 509 N.E.2d 383, 396. The court also properly refused to instruct on mercy. *State v. Lorraine* (1993), 66 Ohio St.3d 414, 417, 613 N.E.2d 212, 216; *State v. Hicks* (1989), 43 Ohio St.3d 72, 78, 538 N.E.2d 1030, 1036.

### V. Sufficiency of Evidence

In his fifth and sixth propositions, Dunlap argues the evidence was insufficient to establish his guilt of the R.C. 2929.04(A)(5) "course of conduct" specification alleging "the purposeful killing" or attempt to kill two or more persons. Dunlap argues he did not intend to kill Crane.

In a review for sufficiency, the evidence must be considered in a light most favorable to the prosecution. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Davis* (1988), 38 Ohio St.3d 361, 365, 528 N.E.2d 925, 930. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

We find the evidence established that Dunlap purposefully killed Crane and thus his guilt of the "course of conduct" specification. Dunlap told Police Chief Blynn Wilcox he was angry with Crane and shot her because "she set the alarm to the police and she didn't give me all the money." One teller identified Dunlap as standing at the counter, and she saw the shotgun barrel "stick out from the edge of the teller counter." According to her, Dunlap "did not hesitate. As soon as he had the money, he shot her." Another teller described Dunlap as "very determined" and "very deliberate," and the force was so strong Crane "was even blown out of her shoes."

Dunlap's deliberate close-range firing of a shotgun at Crane's chest, whatever the type of shells, proved his intent to kill. "[A] firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death[.]" *State v. Widner* (1982), 69 Ohio St.2d 267, 270, 23 O.O.3d 265, 266, 431 N.E.2d 1025, 1028, followed in *State v. Seiber* (1990), 56 Ohio St.3d 4, 14, 564 N.E.2d 408, 419. Accord *State v. Johnson* (1978), 56 Ohio St.2d 35, 39, 10 O.O.3d 78, 81, 381 N.E.2d 637, 640.

### VI. Other Evidentiary Issues

In his thirteenth proposition of law, Dunlap argues the trial court erred in allowing rebuttal testimony from reporter Hopkins in the mitigation phase. In a phone call, Hopkins asked the caller, who named himself Tim Dunlap, about remorse. Dunlap reportedly said, "Yeah, I've got to regret I didn't get away." In extensive voir dire, Hopkins explained why he was satisfied that Dunlap was the caller. Hence, the trial court did not abuse its discretion in allowing Hopkins to testify. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. See, also, Evid.R. 611 and 901.

The prosecutor's failure to list Hopkins as a potential witness, or to eject him from the courtroom under a witness separation order, did not mandate the exclusion of Hopkins as a witness. A rebuttal witness's name need not always be disclosed. See *State v. Howard* (1978), 56 Ohio St.2d 328, 333, 10 O.O.3d 448, 451, 383 N.E.2d 912, 915–916; *State v. Lorraine*, 66 Ohio St.3d at 422, 613 N.E.2d at 220. Moreover, the exclusion of testimony for an asserted discovery violation is discretionary. *State v. Scudder* (1994), 71 Ohio St.3d 263, 269, 643 N.E.2d 524, 530; *State v. Wiles* (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97, 110. Also, any error was harmless. Abundant other evidence suggests Dunlap lacked remorse, including testimony from Dr. Estess, Dunlap's family, and even Dunlap's unsworn statement.

In his fourteenth proposition of law, Dunlap argues the trial court erred in admitting four gruesome photographs, including one autopsy photo and three crime scene photos. Under Evid.R. 403 and 611(A), the admission of photographs is left to a trial court's sound discretion. *State v. Jackson* (1991), 57 Ohio St.3d 29, 37, 565 N.E.2d 549, 559; *State v. Maurer* (1984), 15 Ohio St.3d 239, 264, 15 OBR 379, 401, 473 N.E.2d 768, 791. We are satisfied the trial court did not abuse its discretion in admitting these photographs. See *State v. Morales* (1987), 32 Ohio St.3d 252, 257, 513 N.E.2d 267, 273; *Maurer*, at paragraph seven of the syllabus. Thus, we reject both propositions.

## VII. Constitutional Issues

In his eighth proposition, Dunlap challenges the constitutionality of the felony-murder provisions in Ohio's death penalty statute. However, we have long rejected those claims. See *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, paragraph one of the syllabus. See, also, *Lowenfield v. Phelps* (1988), 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568; *State v. Benner* (1988), 40 Ohio St.3d 301, 306, 533 N.E.2d 701, 708.

We rejected challenges such as Dunlap's ninth proposition in *State v. Beuke* (1988), 38 Ohio St.3d 29, 38–39, 526 N.E.2d 274, 285. See, also, *State v. Bedford* (1988), 39 Ohio St.3d 122, 132, 529 N.E.2d 913, 923; *State v. Sowell* (1988), 39 Ohio St.3d 322, 335–336, 530 N.E.2d 1294, 1308–1309. Dunlap's tenth proposition also lacks merit. See *State v. Jenkins*, 15 Ohio St.3d at 176, 15 OBR at 321–322, 473 N.E.2d at 278–279; *State v. Steffen*, 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, at paragraph one of the syllabus.

## VIII. Other Sentencing Issues

In his seventh proposition, Dunlap correctly argues the trial court erred by allowing the prosecutor to improperly refer to the nature and circumstances of the offense as aggravating circumstances. Admittedly, "the nature and circumstances of the offense are not a statutory aggravating circumstance and cannot be

considered as such." *State v. Lott* (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293, 304; *State v. Davis,* 38 Ohio St.3d at 370–371, 528 N.E.2d at 934.

However, we find any error harmless, since the prosecutor's misstatement did not materially prejudice Dunlap. The trial court's sentence instructions explained to the jury the weighing process and the aggravating circumstances, and these instructions negated the prosecutor's misstatements. See *State v. Greer* (1988), 39 Ohio St.3d 236, 251, 530 N.E.2d 382, 400. "Moreover, the prosecutor could legitimately refer to the nature and circumstances of the offense, both to refute any suggestion that they were mitigating and to explain why the specified aggravating circumstance * * * outweighed mitigating factors." *State v. Combs* (1991), 62 Ohio St.3d 278, 283, 581 N.E.2d 1071, 1077. See, also, *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus.

In his eleventh proposition, Dunlap argues the trial court erred in not requiring the jury, as he requested, to articulate the method by which the jury weighed the aggravating circumstances against mitigation evidence. In effect, Dunlap argues that the jury should make special findings and justify their sentencing verdict.

However, the Constitution does not require a jury in a capital case to render a special verdict or special findings. See *State v. Jenkins,* 15 Ohio St.3d at 212, 15 OBR at 352, 473 N.E.2d at 306; *Hildwin v. Florida* (1989), 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728. Additionally, the General Assembly mandated special findings from the jury as to aggravating circumstances in R.C. 2929.03(B). However, the General Assembly did not require the jury to explain its findings in the sentencing recommendation. Hence, we reject this proposition.

## IX. Reservation of Issues

In his fifteenth proposition, Dunlap asks this court to consider other trial errors which may exist even though he failed to argue or specify such errors. However, absent plain error, Dunlap waived any such issue by not raising them here and in the court of appeals. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364. In any event, we find no plain error that is so grievous that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, at paragraph two of the syllabus. Proof of Dunlap's guilt from his statements and the results of the car search was compelling. Our independent reassessment of the sentence will negate the effect of any unasserted error affecting the sentence.

## X. Independent Sentence Assessment

After independent assessment, we find the evidence clearly proves the aggravating circumstances for which Dunlap was convicted, *i.e.,* murder during a robbery and as a "course of conduct" in purposefully killing or attempting to kill more

than one person. As to possible mitigating factors, we find nothing in the nature and circumstances of the offense to be mitigating. Dunlap lured his girlfriend to a secluded park area, blindfolded her, and promised her a surprise. Then, he led her into the woods and cruelly shot her twice with a crossbow. He left her to die alone, and killed her simply to secure her possessions: an old car, credit cards, and checkbook.

Dunlap's history and background provide modest mitigating features. However, his childhood and life as a young adult are mostly unremarkable. He had the advantages of a stable home, loving parents, and a solid education. Although regularly employed, he did not keep jobs very long. Unfortunately, an early marriage turned sour in its first year, and he became entangled in courts and mental hospitals. After living homeless in Cincinnati, he turned on Bolanos, who had befriended him. Dunlap denied use of drugs or excessive use of alcohol. His admitted personality disorders, confirmed by hospital records and Dr. Estess's testimony, provide only slight mitigation. Additionally, the fact he has a son and a family who love him deserves some weight. Yet, we find nothing in his character to be mitigating.

The statutory mitigating factors of age and lack of a significant criminal history are relevant and deserve modest weight. See R.C. 2929.04(B)(4) and (5). Dunlap had no criminal convictions prior to this offense. Although Dunlap was twenty-three at the time of the offense, he did have some college and was mature.

We find no other applicable statutory mitigating factors in R.C. 2929.04(B)(1) to (6). His "personality disorders" were not a mental disease or defect as Dr. Estess confirmed. See R.C. 2929.04(B)(3); *State v. Fox* (1994), 69 Ohio St.3d 183, 192, 631 N.E.2d 124, 131–132. As to "other factors," in R.C. 2929.04(B)(7), Dunlap's cooperation with police was mitigating evidence. However, no significant "other factors," as specified in R.C. 2929.04(B)(7), are relevant. His personality disorders have already been considered as part of his background. Some evidence exists that Dunlap expressed remorse, but other evidence, including his unsworn statement, contradicts his claims of remorse. Under the circumstances, we assign little weight to Dunlap's remorse.

In our view, the aggravating circumstances outweigh the modest mitigating factors present in this case beyond any reasonable doubt. Dunlap killed Bolanos to rob her, and he robbed her using treachery and extreme violence. Then, he stole her car, assumed the identity of her fictitious husband, Steve Bolanos, and used her credit cards to travel across the country. In Idaho, he killed another woman, thus establishing the calculated "course of conduct." Even when considered collectively, the mitigating factors he raises deserve only modest weight and offer no redeeming value. Thus, we find the death penalty is appropriate.

320

We find the death penalty in this case is neither excessive nor disproportionate when compared with the penalty imposed in similar cases of felony murder. See *State v. Loza* (1994), 71 Ohio St.3d 61, 641 N.E.2d 1082; *State v. Woodard* (1993), 68 Ohio St.3d 70, 623 N.E.2d 75; *State v. Green* (1993), 66 Ohio St.3d 141, 609 N.E.2d 1253; *State v. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972. We further find the death sentence proportionate when compared with similar "course of conduct" murders. See *State v. Loza, supra; State v. Grant* (1993), 67 Ohio St.3d 465, 620 N.E.2d 50; *State v. Lorraine,* 66 Ohio St.3d 414, 613 N.E.2d 212; *State v. Hawkins* (1993), 66 Ohio St.3d 339, 612 N.E.2d 1227; *State v. Montgomery* (1991), 61 Ohio St.3d 410, 575 N.E.2d 167; *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483; *State v. Combs,* 62 Ohio St.3d 278, 581 N.E.2d 1071.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and COOK, JJ., concur.