JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Charles Southern, appeals the decision of the Cuyahoga County Common Pleas Court that denied his motion to suppress. For the reasons that follow, we affirm.
{¶ 2} On the evening of October 27, 2000, Officer John Gioitta and two other law enforcement officers from the Cleveland Police Department set up surveillance outside an apartment building on Luxor Avenue in East Cleveland after receiving reports that a resident, Edward J. Jones ("Jones"), was selling illegal prescription drugs from an apartment in that building. Appellant was observed by the officers exiting the apartment and the building shortly thereafter. As he was exiting the building, the officers approached appellant whereupon appellant dropped a prescription bottle, which was marked as belonging to Jones and contained what was marked and later identified as methadone. After being read his rights, appellant admitted that he bought the methadone from Jones, who had obtained the prescription drug from the Veterans' Administration Medical Center (VAMC) where Jones was a patient.
{¶ 3} According to Ofc. Gioitta's testimony, appellant was offered the opportunity to serve as a confidential reliable informant. Appellant agreed and the officers took appellant to a nearby park where they had him sign several papers, one of which was a written statement concerning appellant's most recent buy from Jones. The remaining papers dealt with appellant's confidential identity and his agreement to transact two controlled buys at the same apartment. The officers wired appellant and he returned to Jones's apartment to conduct the transactions. No one answered the door to the apartment, however, and appellant was eventually driven home.
{¶ 4} Appellant was subsequently indicted for one count of possession of drugs, in violation of R.C. 2925.11. Appellant moved to suppress his statements made to the officers. At the hearing that followed, appellant testified that he is an acquaintance of Jones and that the latter works and receives medical care at the VAMC. According to appellant, Jones asked appellant to pick him up from that facility on the day in question because Jones's car apparently was not functioning adequately. Appellant further testified that he was aware that Jones took Methadone and received his prescription for that drug from that facility. After dropping Jones off at his apartment, appellant noticed a prescription bottle with Jones's name on it. Thinking that he had inadvertently left the bottle in appellant's car, appellant contacted Jones upon arriving home and the two allegedly made arrangements for appellant to return the bottle to Jones sometime that evening.
{¶ 5} Although he had used a vehicle earlier to retrieve Jones from the VAMC, appellant testified that his car was not working and asked his brother, Dewey Southern, to pick him up so he could return the prescription bottle to Jones. Dewey agreed, picked up appellant and drove to Jones's apartment. Dewey testified that he parked his car several car lengths away from the apartment and waited for his brother. Claiming that no one was home when he went to Jones's apartment, appellant was returning to his brother's car when he became startled on the officers' approach. It was because he was startled, he testified, that he dropped the prescription bottle.
{¶ 6} Dewey testified that he observed the officers, who he described as physically large and imposing, approach appellant. Shortly thereafter, Dewey was told by the officers that appellant was being taken to jail. The officers asked him to leave the area and he complied.
{¶ 7} Appellant testified that no officer read him his rights before he made his statement wherein he admitted buying the methadone from Jones. He further testified that he only agreed to serve as an informant because he felt pressured by the officers.
{¶ 8} The court denied the motion to suppress. Appellant eventually pleaded no contest and was sentenced accordingly. He is now before this court and assigns five errors for our review, which, in essence, all challenge the trial court's decision denying his motion to suppress.
{¶ 9} When considering a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Fanning (1982), 1 Ohio St.3d 19, 20; see, also, State v.Dunlap, 73 Ohio St.3d 308, 314, 1995-Ohio-243; State v. Mills (1992),62 Ohio St.3d 357, 366. Consequently, a reviewing court must accept the trial court's factual findings if they are supported by competent, credible evidence. State v. Smith, 80 Ohio St.3d 89, 105, 1997-Ohio-355; see, also, State v. Curry (1994), 95 Ohio App.3d 93, 96. Nonetheless, a reviewing court must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. State v. Anderson (1995), 100 Ohio App.3d 688,691. With this standard in mind, we address each of appellant's assigned errors.
 I.
{¶ 10} In his first and second assignments of error, appellant argues that his statements to the police were the product of coercion and police misbehavior and that, as such, he was denied due process of law when the trial court denied his motion to suppress. In support of his argument, appellant claims that, before signing the documents that contained his written confession, Ofc. Gioitta had his gun out and that the officers, all of whom were physically larger than appellant, made threatening comments to him. He claims that he was further told that he would escape prosecution if he cooperated with them and arranged two controlled buys.
{¶ 11} "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976),49 Ohio St.2d 31, paragraph two of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155; see, also,State v. Bays, 87 Ohio St.3d 15, 22, 1999-Ohio-216.
{¶ 12} Considering these factors, we cannot conclude that appellant's confession was the product of coercion or police misconduct. According to Ofc. Gioitta's testimony, appellant admitted purchasing the methadone from Jones shortly after he was approached and questioned by the officer. Appellant then executed a written document to that effect later at the park. Prior to both confessions, Ofc. Gioitta testified that appellant was read his Miranda rights. Having already obtained a verbal statement from appellant, there was little incentive to coerce appellant into a written statement at the park. See State v. Twyford,94 Ohio St.3d 340, 361, 2002-Ohio-894.
{¶ 13} Appellant also relies on State v. Arrington (1984),14 Ohio App.3d 111 for the proposition that direct or indirect promises of leniency militate against the voluntariness of an accused's confession if the accused relied on those promises. From the record before us, we cannot conclude that any such promises were made.
{¶ 14} Ofc. Gioitta testified that no promises were made to appellant while appellant testified to the contrary. To be sure, appellant was not even offered the opportunity to serve as an informant at the time he exited Jones's apartment and first confessed to buying the methadone from Jones. As with his coercion argument, there would have been little incentive to offer leniency if a statement admitting his role had already been obtained. Consequently, appellant's argument that he was offered leniency in exchange for his cooperation seems disingenuous at the very least. It certainly was within the province of the trial court to resolve the conflicting testimony by assessing the credibility of each of the witnesses and finding appellant's testimony less credible.
{¶ 15} Appellant also asks us to characterize the officers' conduct as "conduct that shocks the conscience." Relying on Rochin v.California (1952), 342 U.S. 165,[1] appellant argues that the officers' decision to take him to a local park rather than the police station was fundamentally unfair and rises to the level of police misconduct. We disagree.
{¶ 16} Ofc. Gioitta testified that appellant was taken to the park when he agreed to serve as an informant. For appellant's safety and in order to avoid recognition if taken to the police station, he was taken to a local park where the necessary paperwork could be completed. While it may have been wiser to have taken appellant to a place with better lighting since his signature was required on several documents, we cannot fault the officers for taking appellant to a place other than the police station. Moreover, we cannot say that this conduct was so brutal and "offensive" that it did not comport with traditional ideas of fair play and decency. See, e.g., Breithaupt v. Abram (1957), 352 U.S. 432, 435,77 S.Ct. 408, 89 L.Ed.2d 251; see, also, Cty. of Sacramento v. Lewis
(1998), 523 U.S. 833, 846-847, 118 S.Ct. 1708, 140 L.Ed.2d 1043.
{¶ 17} Appellant's first and second assignments of error are not well taken and are overruled.
 II.
{¶ 18} In his fourth and third assignments of error, appellant claims that his confession was made without being given a Miranda
warning or, alternatively, even in the absence of such a warning his confession was illegally obtained because there was no probable cause to arrest appellant.
{¶ 19} "When an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." Miranda v. Arizona (1966), 384 U.S. 436, 478,86 S.Ct. 1602, 16 L.Ed.2d 694, To protect the privilege against self-incrimination, the authorities must warn the individual prior to any questioning "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Id. at 479.
{¶ 20} Appellant claims that Ofc. Gioitta's testimony, as it pertains to appellant confessing after being read his Miranda rights, is insufficient to show that appellant validly waived those rights. He claims this is especially true since appellant disputes that the officer read him these rights. Appellant appears to argue that what was stated to appellant must be reiterated under oath verbatim. We disagree.
{¶ 21} There is sufficient evidence for the trial court to have found that appellant was properly informed of his Miranda rights prior to questioning. The court was free to reject or accept the testimony of appellant or that of the officer. Being in the best position to judge credibility, it chose to accept the officer's version of events. We see no error.
{¶ 22} Appellant next contends that even if he was given aMiranda warning, his confession should be suppressed because he was detained without probable cause. Appellant relies on Dunaway v. New York
(1979), 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 for the proposition that if an individual is illegally detained, any forthcoming confession is inadmissible even if Miranda warnings were properly recited.
{¶ 23} Appellant maintains that his transport to a local park for questioning constituted an unlawful detention and any statements made at that time are subject to suppression even if he was read his Miranda
rights. However, a law enforcement official may stop and investigate unusual behavior, even without probable cause to arrest, when that officer reasonably concludes that the individual is engaged in criminal activity. In making that conclusion, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Statev. Andrews (1991), 57 Ohio St.3d 86, 87, quoting Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889.
{¶ 24} In this case, the police officers had a reasonable suspicion that appellant may have been involved in criminal activity. Numerous reports were made about the possible illegal sale of prescription drugs from the apartment under police surveillance, the same apartment appellant was seen leaving. Under the circumstances, the initial intrusion was warranted and the officers were well within their authority to investigate whether appellant was involved in any criminal activity. That he subsequently confessed after questioning and then again signed a written statement to that effect at the park does not support that appellant was illegally detained.
{¶ 25} Appellants third and fourth assignments of error are not well taken and are overruled.
 III.
{¶ 26} In his fifth assignment of error, appellant contends that there was no basis for stopping him and that any evidence seized as a result of that unlawful stop must be suppressed. Appellant argues that this court's decision in State v. Brock (Dec. 20, 1999), Cuyahoga App. No. 75168, 1999 Ohio App. Lexis 5890, is indistinguishable and requires reversal. We disagree.
{¶ 27} The police officer in Brock had no reason to suspect that the defendant in that case was involved in criminal activity. To the contrary, police had suspected the defendant's companion of illegal activity. That is not the case here. As discussed in Section II, police had reasonable suspicion to investigate whether appellant was involved in the illegal sale of prescription drugs since he was observed exiting the apartment that was under surveillance for such activity.
{¶ 28} Appellant's fifth assignment of error is not well taken and is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., and DIANE KARPINSKI, J., CONCUR
[1] The United States Supreme Court held that the forced pumping of a criminal defendant's stomach offended due process as conduct "that shocks the conscience" and violates the "decencies of civilized conduct."