[Cite as *State v. McGowan*, 2011-Ohio-5663.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96232**

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## ANDRE McGOWAN

DEFENDANT-APPELLEE

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-541216

**BEFORE:** Stewart, J., Blackmon, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** November 3, 2011

**ATTORNEYS FOR APPELLANT**

William D. Mason
Cuyahoga County Prosecutor

By:   Marcus A. Henry
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113


**ATTORNEY FOR APPELLEE**

Paul A. Daher
700 West St. Clair Avenue, Suite 214
Cleveland, OH    44113


MELODY J. STEWART, J.:

{¶ 1}   The state of Ohio appeals from a ruling that suppressed marijuana seized from defendant-appellee, Andre McGowan.   Police gave chase to two men, one whom they later claimed was McGowan, after they unexplainedly fled upon seeing the officers. They located him in an apartment building and found the marijuana during a pat-down they conducted when he appeared to reach into his pocket.   The court was unpersuaded that the police accurately identified McGowan as the person who fled into the apartment. The state's sole assignment of error contests this ruling.

I

{¶ 2} Two police officers testified at the suppression hearing. They were partners in a patrol car and received an order to investigate a complaint of drug activity in front of an apartment building. When they arrived at the site of the complaint, they saw a group of people gathered in front of the building. One of the officers testified that two men, upon seeing the police car, "ran inside the building"; the other officer testified that they "quickly walked in" the building. The officers identified themselves as police officers and told both men to stop, but were ignored. The apartment building was a three-story building with 19 apartments. It had a center staircase with windows that allowed the officers to watch the two men climb the stairs and enter a second-floor apartment.

{¶ 3} The building had a locked front entrance that prevented the officers from following the men. After a "few moments," a male exited the same apartment that the two men entered and asked the officers for an explanation. The male identified himself as the tenant of the apartment. When the officers asked the tenant to identify the two men who ran into the apartment, the tenant told them that they were "some people he knew, they weren't really friends, but they were acquaintances, and he was surprised to see them." The officers asked if they could speak to the men, so the tenant took them inside. By this time, two more police officers had arrived as backup.

{¶ 4} The police entered the apartment and saw McGowan and another male sitting on the couch. McGowan "seemed very nervous." They asked McGowan why he ran, at which point McGowan started reaching into his pocket. Concerned that he might

be reaching for a weapon, the police ordered McGowan to put his hands on his head and then conducted a pat-down for their own safety. During the pat-down, an officer felt "numerous small hard lumps"that he knew from experience were drugs. He "visually inspected" the pocket by pulling it open to ensure that there were no needles or razor blades that could harm him. He then removed 14 individually-wrapped bags of marijuana from McGowan's pocket.

{¶ 5} The tenant testified for McGowan and said that he had invited McGowan to visit. They were talking and drinking beer when his girlfriend came over to visit. The tenant went downstairs to let her in and saw the police. The police told him to hold the door and asked, "who ran in through [tenant's] apartment?" The tenant replied, "[n]o one." He said that the police grabbed him by the arm and walked him up the stairs, telling him "if [he doesn't] open the door, they'll take me to jail." They entered the apartment and the police ordered the tenant to restrain his dog. After he secured the dog, he learned from the police that they found drugs on McGowan. The tenant testified that McGowan and the other male had been in his apartment the entire time and that they did not leave the apartment and then run back inside.

{¶ 6} Ruling from the bench, the court stated that it was "troubled that the police had the right person." It wondered how the police were able to claim that they saw McGowan run into the building, climb a flight of stairs, and enter the apartment in the daylight:

**{¶ 7}** "So you just ask yourself:  how exactly in essentially daylight, 7 o'clock in August, do you look inside a building? \*\*\* And then you have to accept that in this 19-suite apartment building the person who just this second is opening the door to the building is the person who belongs to that door that the police officers saw the people run into.  What luck is that?

**{¶ 8}** "So it's just very hard to believe that the police officers are doing anything other than going in the building to look for the 2 fleeing people, happening upon [the tenant] and then they have [the tenant] take them upstairs to his place, and lo and behold we have some people.

**{¶ 9}** "Now I'm not sure that I believed everything [the tenant] had to say.  But the plane [sic] fact of the matter is that it just hasn't been explained to me how the police developed reasonable suspicion to stop this particular human being or whether they were just looking, you know, to see if they could happen upon — this is a 19-suite apartment building.

**{¶ 10}** "\*\*\*

**{¶ 11}** "I'm always troubled when we have people running away in this set of circumstances.  But the biggest deficiency here is whether there is sufficient evidence to get me to believe that the police really found the person who ran into that building.  So that's what I hang my hat on."

II

{¶ 12} An exception to the warrant requirement of the Fourth Amendment to the United States Constitution exists for investigatory stops. Investigatory stops are brief seizures by police officers and are lawful when justified by a "reasonable suspicion" that criminal activity has or is about to occur. *Terry v. Ohio* (1968), 392 U.S. 1, 20-21, 88 S.Ct. 1868, 20 L.Ed.2d 889. A "reasonable suspicion" exists when an officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." Id. at 21. To determine whether a reasonable suspicion exists at the time of the encounter, the courts use a "totality of the circumstances" test. *United States v. Arvizu* (2002), 534 U.S. 266, 275-277, 122 S.Ct. 744, 151 L.Ed.2d 740. When police reasonably suspect that a person is engaged in criminal activity, police may stop and question that person for a limited period of time. A generalized fear of criminal activity and the presence of a suspect in a high-crime neighborhood are factors that, standing alone, do not justify seizure. *Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357. These factors can be used by the courts, however, in assessing the totality of the circumstances surrounding a seizure. Thus, a suspect's unprovoked flight upon seeing the police can justify a seizure when it occurs in a high-crime neighborhood. *Illinois v. Wardlow* (2000), 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570; *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864.

{¶ 13} As part of the investigatory stop, an officer who "has reason to believe that he is dealing with an armed and dangerous individual" may frisk an individual, for the

safety of the officer and those in the area.  *Terry*, 392 U.S. at 27.  In cases involving suspected drug trafficking, the Ohio Supreme Court has also observed that:  "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed."  *State v. Evans*, 67 Ohio St.3d 405, 413, 1993-Ohio-186, 618 N.E.2d 162.

{¶ 14} There are thus two conditions that must be met for a *Terry* stop and frisk to be lawful:  first, the investigatory stop must be lawful; second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.  *Arizona v. Johnson* (2009), 555 U.S. 323, 129 S.Ct. 781, 172 L.Ed.2d 694.

{¶ 15} The state argued that the police were justified in conducting a brief investigatory stop based on the report of drug dealing in a high-crime area and the flight of the two men into the building upon seeing the police officers.  The state also argues that having made a valid investigatory stop, the police were justified in conducting a pat-down for weapons when McGowan acted nervous and started reaching into his pocket.

{¶ 16} The court found that the stop conducted in this case was unreasonable because the state failed to offer enough credible evidence to show that McGowan was the same person whom the police saw flee into the building.  The court ruled, in essence, that it was unpersuaded that the police questioned the right man.

{¶ 17} The court acts as the trier of fact when ruling on a motion to suppress, so we necessarily defer to its factual finding because it is in the better position to resolve

questions of fact and to evaluate witness credibility. See *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. We thus accept the court's factual findings if they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶100.

{¶ 18} There was significant testimony contrary to the court's conclusion that the police failed to establish that McGowan was the right man: both police officers identified McGowan as one of the men on the street who ran into the apartment building; and both police officers said they could see McGowan through windows as he ran up the stairwell and into the tenant's apartment.

{¶ 19} The court thought it more credible that McGowan had been in the apartment building all along. To reach this conclusion, the court necessarily had to give greater weight to the tenant's testimony.

{¶ 20} We cannot substitute our judgment for that of the trier of fact unless the court's findings are against the manifest weight of the evidence. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548. Some may have reached a different conclusion than the court, but that is not a basis for concluding that the court's findings of fact were not supported by competent, credible evidence.

{¶ 21} With the court not being convinced that the police stopped the right person, it necessarily follows that the investigatory stop was unlawful because the police lacked a

reasonable suspicion that McGowan had been engaged in criminal activity. Having reached this conclusion, we need not consider whether the police were justified in conducting a pat-down for officer safety.[1]

Judgment affirmed.

It is ordered that appellee recover of appellant his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MELODY J. STEWART, JUDGE

PATRICIA ANN BLACKMON, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR

---

[1] The state also argues that McGowan lacked standing to challenge the stop and search of his person because he lacked an expectation of privacy while inside the tenant's apartment. We fail to understand the relevance of this argument. As the person being patted-down, McGowan had a personal privacy interest against an unreasonable government intrusion. Since this interest is private, McGowan was the only person who had standing to object. The fact that the pat-down occurred in some other person's apartment is immaterial to whether McGowan had standing.