[Cite as *State v. Gordon*, 2021-Ohio-1803.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellant | Hon. W. Scott Gwin, J.<br>Hon. William B. Hoffman, J. |
| -vs- | |
| | Case No. 2020 CA 00076 |
| ROBERT F. GORDON | |
| Defendant-Appellee | O P I N IO N |

CHARACTER OF PROCEEDINGS:     Appeal from the Licking County Municipal
                              Court, Case No. 20TRC04632

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       May 25, 2021

APPEARANCES:

For Plaintiff-Appellant              For Defendant-Appellee

J. MICHAEL KING                      SCOTT E. WRIGHT
Assistant Law Director               7662 Slate Ridge Blvd.
City of Newark                       Reynoldsburg, Ohio 43068
40 West Main Street, Fourth Floor
Newark, Ohio 43055

*Hoffman, J.*

{¶1} Plaintiff-appellant state of Ohio appeals the December 9, 2020 Judgment Entry entered by the Licking County Municipal Court, which granted defendant-appellee Robert F. Gordon's motion to suppress.

## STATEMENT OF THE FACTS AND CASE

{¶2} On August 13, 2020, Trooper Zachariah Maust of the Ohio State Highway Patrol initiated a traffic stop after observing Appellee's vehicle travel left of center. Appellee was cited with driving left of center, in violation of R.C. 4511.25, and operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a) and (A)(2).

{¶3} Appellee filed a motion to suppress on September 23, 2020. The state filed a memorandum contra. The trial court conducted a hearing on the motion on November 5, 2020.

{¶4} Trooper Maust testified he was on duty, working the third shift, on August 13, 2020. He was in uniform and operating a marked cruiser with a working visible light bar. At approximately 10:21 p.m., as he was traveling on Reddington Road toward Cherry Valley Road in Newark, Licking County, Ohio, Trooper Maust testified he observed, in his rearview mirror, a vehicle which was traveling in the opposite direction go left of center. Appellee was subsequently identified as the driver of the vehicle, a pickup truck. The trooper turned his cruiser around in order to further observe Appellee.

{¶5} As Trooper Maust approached the intersection of Main Street and Redding Road, which he noted becomes Thornwood Drive, he again caught sight of Appellee. Trooper Maust explained a blue sedan had turned onto Thornwood Drive from Main Street and was between his cruiser and Appellee. Trooper Maust stated, despite the

other vehicle, he observed Appellee travel completely over the center line after crossing railroad tracks. The trooper drove around the blue sedan and observed Appellee weaving within his lane then cross over the fog line on the right-hand side. Trooper Maust activated his overhead lights and a traffic stop.

{¶6} Trooper Maust acknowledged the second left of center violation cannot be seen in the recording from his cruiser's video camera. He explained the video camera is situated on the passenger side of the cruiser; therefore, the video only provides a center-right view of the road. Trooper Maust added, from his position in the driver's seat, he was able to watch the center line.

{¶7} On cross-examination, Trooper Maust indicated Appellee was able to successfully navigate the twists and turns, and the eight elevation changes in the road. The trooper stated the left of center violation occurred near the intersection of Thornwood Drive and Irving Wick Drive. Trooper Maust again acknowledged the recording from his cruiser's video camera does not show a lane violation. He added the blue sedan obstructed the view of where the double line began. Trooper Maust explained the location of the video camera prevented a view of the center lane given the blue sedan in front of him. Trooper Maust testified Appellee was able to bring his vehicle to a stop without incident after executing a left turn, also without incident.

{¶8} On re-direct examination, Trooper Maust stated, after he made contact with Appellee, he advised Appellee he had stopped him for going left of center. On the video, Appellee can be heard responding, "Yeah." On re-cross examination, Trooper Maust indicated the left of center violation occurred between the railroad tracks and Irving Wick Drive.

**{¶9}** After hearing Trooper Maust's testimony and listening to the parties' arguments, the trial court took the matter under advisement.

**{¶10}** Via Judgment Entry filed December 9, 2020, the trial court granted Appellee's motion to suppress. The trial court found Trooper Maust did not have probable cause or a reasonable articulable suspicion sufficient to justify the stop of Appellee.

**{¶11}** It is from this judgment entry the state appeals, raising the following assignment of error:

THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEEE'S [SIC] MOTION TO SUPPRESS THE STOP.

I

**{¶12}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the

trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶13} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning* , 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶14} The state submits the trial court's findings were not supported by competent, credible evidence, and the trial court incorrectly decided the ultimate issue.

{¶15} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures by the government. *State v. Martin*, 12th Dist. Warren No. CA2018-09-105, 2019-Ohio-2792, ¶ 14. This protection includes unreasonable automobile stops. *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 11.

{¶16} Ohio recognizes two types of lawful traffic stops, each requiring a different constitutional standard. *State v. Ratliff*, 12th Dist. Butler No. CA2019-09-163, 2020-Ohio-3315, ¶ 6-7.  One is a typical non-investigatory stop where an officer directly observes a

traffic violation, giving rise to probable cause to stop the vehicle. *Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89. The second type of stop is an investigative stop, or *Terry* stop, which occurs where an officer has a reasonable suspicion based upon specific and articulable facts criminal behavior has occurred or is imminent. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889.

**{¶17}** While the concept of reasonable and articulable suspicion has not been precisely defined, it has been described as something more than an undeveloped suspicion or hunch, but less than probable cause. *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908, 2011 WL 4436647, ¶ 31-33. To determine whether an officer had reasonable suspicion to conduct a *Terry* stop, the "totality of circumstances" must be considered and "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740, (2002), quoting *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 19-22.

**{¶18}** In the instant case, the trial court found Trooper Maust "lacked a reasonable, articulable suspicion of wrongdoing sufficient to justify stopping [Appellee]." Dec. 9, 2020 Judgment Entry at 5.

Here, the trooper testified that he personally observed [Appellee] go over the center line on two occasions. Unfortunately, the video does not show this. Maust explained that, due to the location inside the cruiser where the camera is mounted – to the windshield toward the passenger side – the camera is not able to show the same thing that he can see with his eyes.

The whole point of having video cameras in cruisers is to record events, including violations of law. It is frustrating, to say the least, to see video after video that does not capture the infraction claimed by the officer and this case is no exception.

The trooper claims to have personally observed a traffic violation. This would render the stop a non-investigatory stop granting him probable cause to stop the vehicle. The objective video evidence does not corroborate the trooper's testimony and the Court finds that he did not have probable cause to stop the vehicle because a violation of the law did not occur.

The traffic stop would still be permissible if the trooper possessed reasonable, articulable suspicion that [Appellee] had committed or was committing an offense. Here, the trooper claimed he saw – not suspected – a traffic infraction. The Court has found that there is a lack of competent, credible evidence to support that claim. *Id.* at 4.

{¶19} We have reviewed the video and, like the trial court, find such does not demonstrate any traffic violation. As stated, supra, when ruling on a motion to suppress,

the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *State v. Dunlap,* supra. Based upon the findings, it is clear the trial court did not find Trooper Maust's testimony to be credible as to either alleged left of center violation.  Without objective video evidence, the trial court concluded the trooper did not possess a reasonable, articulable suspicion Appellee committed or was committing a traffic offense.  We find the trial did not err in granting Appellee's motion to suppress.

{¶20}  The state's sole assignment of error is overruled.

{¶21}  The judgment of the Licking County Municipal Court is affirmed.


By: Hoffman, J.
Baldwin, P.J.  and
Gwin, J. concur