[Cite as *State v. Foreman*, 2025-Ohio-3307.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 CA 00020 |
| Plaintiff - Appellant | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Licking County Court of Common Pleas, Case No. 24 CR 718 |
| MARK FOREMAN, | Judgment:   Reversed and Remanded |
| Defendant - Appellee | Date of Judgment Entry: September 12, 2025 |

**BEFORE:** Craig R. Baldwin; Kevin W. Popham; David M. Gormley, Appellate Judges

**APPEARANCES:** KENNETH OSWALT, Assistant Prosecuting Attorney, for Plaintiff-Appellant; ELIZABETH A. MOTE, for Defendant-Appellee.

*Baldwin, P.J.*

**{¶1}** Appellant State of Ohio appeals the decision of the trial court granting appellee Mark Foreman's motion to suppress evidence obtained during a traffic stop. For the reasons set forth below, we reverse and remand the trial court's decision.

## STATEMENT OF FACTS AND THE CASE

**{¶2}** The appellee was indicted following a traffic stop on one count of Aggravated Possession of Drugs (Methamphetamine) in violation of R.C. 2925.11(A), a felony of the second degree; and, one count of Illegal Use or Possession of Drug Paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. The appellee filed a Motion to Suppress in which he argued that law enforcement officers lacked reasonable suspicion for the traffic stop and, as a result, evidence seized from the

vehicle during the stop should be suppressed. The appellant filed a brief in response. A hearing was conducted on the Motion to Suppress at which the following evidence was presented.

**{¶3}** Deputy Jason Harmon of the Licking County Sheriff's Office testified that he was on patrol with another deputy at an I-70 Eastbound rest area on October 12, 2024, on the midnight to 8:00 a.m. shift. The deputies observed "a couple" of subjects getting into a Chevy Impala parked in the rest area. Deputy Harmon testified that he could not determine how many individuals got into the vehicle, or whether they were male or female.

**{¶4}** Deputy Harmon ran the vehicle's registration and discovered that the registered owner, A.F., had a suspended driver's license. Harmon testified that he pulled over into the parking lane and allowed the vehicle to drive past him. Once the vehicle entered I-70, he effectuated a traffic stop based upon the fact that the registered owner of the vehicle did not have a valid license. Deputy Harmon testified that he had reasonable suspicion to stop the vehicle because it is "typical that the registered owner would be the driver."[1] When he approached the vehicle, Harmon realized that it was the appellee, and not A.F., who was operating the vehicle. Deputy Harmon asked the appellee for his identification, and discovered that the appellee's driver's license was also suspended. In fact, none of the three occupants of the vehicle possessed a valid driver's license. Further, it would be over an hour before someone could arrive to pick them up.

**{¶5}** Deputy Harmon, together with the other deputy, pulled each of the occupants from the vehicle, questioned them, and, with the consent of all three, searched

---

[1] The vehicle also had a hanging license plate light. The appellant submits that it is unclear whether Deputy Harmon would have stopped the vehicle had that been the only issue.

the vehicle. Items found during the search included drugs in the center console and a syringe in the glove compartment, both of which the appellee admitted were his.

{¶6} On April 16, 2025, the trial court issued a Decision and Order Granting Defendant's Motion to Suppress in which it found that the stop of the vehicle operated by the appellee could not be sanctioned based upon either the registered owner's suspended license or the hanging license plate light as a possible equipment violation,[2] and granted the appellee's Motion to Suppress.

{¶7} The appellant filed a timely Notice of Appeal pursuant to R.C. 2945.67, Crim.R. 12(K), and App.R. 4(B)(4), and sets forth the following sole assignment of error:

"I. A TRIAL COURT COMMITS ERROR IN GRANTING A MOTION TO SUPPRESS EVIDENCE WHEN IT FAILS TO TAKE INTO ACCOUNT THAT THE LAW PERMITS:

- AN OFFICER TO OPERATE ON THE COMMONSENSE INFERENCE THAT THE REGISTERED OWNER OF A VEHICLE IS MOST LIKELY ITS DRIVER AND THUS WHEN HE KNOWS THAT THE REGISTERED OWNER DOES NOT HAVE A VALID LICENSE, HE MAY STOP THE VEHICLE UNLESS HE HAS INFORMATION THAT ACTUALLY NEGATES A BELIEF THAT THE REGISTERED OWNER IS DRIVING; AND,

- AN OFFICER TO CHECK THE VALIDITY OF THE LICENSE OF THE DRIVER, EVEN THOUGH BELATEDLY THE OFFICER

---

[2] The appellant is not challenging the equipment violation issue. Instead, it challenges only the trial court's conclusion that the stop was not justified by the fact that the driver's license of the vehicle's registered owner was suspended.

CONFIRMS THAT THE REGISTERED OWNER IS NOT DRIVING."

**STANDARD OF REVIEW**

**{¶8}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact, and is in the best position to resolve questions of fact and to evaluate witness credibility. *Id*. *See, also*, *State v. Dunlap,* 73 Ohio St.3d 308, 314 (1995), quoting *State v. Fanning,* 1 Ohio St.3d 19, 20 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See, Burnside*; and, *State v. Hill,* 2024-Ohio-522, ¶16 (5th Dist.).

**{¶9}** However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside*; and, *Hill*. "That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. Moreover, due weight should be given 'to inferences drawn from those facts by resident judges and local law enforcement officers.'" (Citation omitted.) *Hill*.

**ANALYSIS**

**{¶10}** The testimony of Deputy Harmon at the Motion to Suppress hearing established that he observed a number of individuals get into the vehicle at a rest stop in the early morning hours. He could not determine the exact number of individuals in the vehicle, nor could he determine whether they were male or female. He ran the plates on the vehicle, and discovered that the registered owner of the vehicle had a suspended

driver's license. Based upon the information he had at the time, and his experience with regard to registered owners normally being the ones operating their vehicles, he initiated a traffic stop. Deputy Harmon only discovered that the registered owner was not operating the vehicle after making the stop and approaching the vehicle. He requested identification from all three occupants of the vehicle, and determined that none of them possessed a valid driver's license. He then called a tow truck and, with the consent of all three occupants, searched the vehicle, during which the drugs and syringe were discovered.

{¶11} The Ohio Supreme Court addressed nearly identical facts in the case of *State v. Dunlap,* 2024-Ohio-4821. In *Dunlap,* the officer sat in a parking lot running registration checks on the license plates of passing vehicles. *Id.* at ¶4. One such inquiry led the officer to a vehicle in which the female owner had a suspended driver's license. Based on this information, the officer pulled the vehicle over. Upon approaching the driver's side window, the officer realized that the owner was not driving the vehicle, but rather, was a passenger. The male driver provided his state identification, and the officer determined that the driver of the vehicle also had a suspended license. Since neither the owner nor the driver had a valid driver's license, the officer called a tow truck and conducted an inventory search of the vehicle. The search revealed an unloaded firearm located in the vehicle, and both the driver and the owner were charged with improper handling of a firearm in a motor vehicle. The defendants filed motions to suppress, which were heard at a consolidated hearing. The trial court denied the motions to suppress, but the court of appeals reversed, finding that the motions should have been granted. The court of appeals' decision conflicted with the decision from another district, which was

also appealed. The Ohio Supreme Court determined that a conflict existed, and the matters were consolidated for review.

**{¶12}** The *Dunlap* Court held that the officer possessed a reasonable suspicion to make the stop, stating:

> The United States Supreme Court has held that the reasonableness of a traffic stop under the Fourth Amendment should be evaluated in a manner more akin to the brief detention of a permissible *Terry* stop than to a formal arrest. *See Berkemer*, 468 U.S. at 439, 104 S.Ct. 3138, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As is true of a *Terry* stop, an officer initiating a traffic stop must have reasonable suspicion—or, in other words, a " 'particularized and objective basis for suspecting the particular person stopped of criminal activity,' " *Kansas v. Glover*, 589 U.S. 376, 380, 140 S.Ct. 1183, 206 L.Ed.2d 412 (2020), quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

> Officer Centrackio had reasonable suspicion to stop the vehicle. The United States Supreme Court has recently made clear that an officer does not violate the Fourth Amendment "by initiating an investigative traffic stop after running a vehicle's license plate and learning that the registered owner has a revoked driver's license," *id.* at 378, 140 S.Ct. 1183. Such a stop is reasonable as long as "the officer lacks information negating an inference that the owner is the driver of the vehicle." *Id*. Thus, Officer Centrackio was entitled to make the traffic stop based on the information acquired from

LEADS indicating that the owner of the vehicle did not have a valid driver's license.

(Footnote omitted.) *Id.* at ¶16-17. The Ohio Supreme Court reversed the decision of the court of appeals, and reinstated the trial court's decision which had denied the motion the suppress. *Id.* at ¶30.

{¶13} Application of the *Dunlap* reasoning to the facts of the case sub judice leads to the conclusion that the appellee's motion to suppress should have been denied. Deputy Harmon ran the registration of the vehicle and discovered that the registered owner, A.F., had a suspended license. Based upon this information he pulled the vehicle over, just as the officer in *Dunlap.* And just as the officer in *Dunlap,* Deputy Harmon realized that A.F. was not the driver only upon his approach of the vehicle. Since neither the driver nor the passengers possessed a valid driver's license, and no one could pick them up for over an hour, Deputy Harmon called for a tow truck and, with the occupants' consent, searched the vehicle. Upon searching the vehicle, after the valid stop and with the consent of all three occupants, Deputy Harmon found the drugs and drug paraphernalia.

{¶14} As the *Dunlap* Court stated in its plurality opinion, "…once a police officer has lawfully initiated a traffic stop, the mission of the stop includes asking the driver for a driver's license." *Id.* at ¶29. Deputy Harmon lawfully initiated the stop based upon the fact that the driver's license of the vehicle's registered owner was suspended. Furthermore, his inquiry regarding the status of the appellee's driving privileges was also lawful. Accordingly, the appellant's assignment of error is sustained.

## CONCLUSION

**{¶15}** Based upon the foregoing, we hereby sustain the appellant's sole assignment of error, reverse the Licking County Court of Common Pleas' Decision and Order Granting [appellee's] Motion to Suppress, and remand the matter to the trial court for further proceedings consistent with this opinion.

**{¶16}** Costs to Appellees.


By: Baldwin, P.J.

Popham, J. and

Gormley, J. concur.