OPINION
{¶ 1} The defendant-appellant, Rex A. Kuhn ("Kuhn"), appeals the April 19, 2006 Judgment of conviction and sentence entered in the Court of Common Pleas of Defiance County, Ohio.
 {¶ 2} Officers of the Defiance County Sheriff's Department were called to a residence at 21260 Switzer Road in Defiance, Ohio, where the Officers observed the body of Cyrus Tyler Oelke ("Cyrus"). Further investigation determined that Cyrus' death was caused by a .22-caliber gunshot wound to the chest. On May 8, 2004, Kuhn was identified as a suspect and subsequently interrogated by the Defiance County Sheriff's Department.
 {¶ 3} At approximately 9:00 a.m. on May 8, 2004, Deputy Jinna Waxler and Deputy Ben Moser made contact with Kuhn at his employment. Kuhn said he would go with the officers to the Sheriff's Office for some questioning. Once they arrived at the Sheriff's Office, Deputy Waxler advised Kuhn of his Miranda
rights. Deputy Waxler, Deputy Moswer and Kuhn sat in the office and moved to a picnic table outside to be able to smoke while they drank coffee and pop and ate pizza during their conversation. Kuhn was not restrained at this time. Kuhn asked if Sergeant Cliff Vandemark was at the Sheriff's Office because they had gone to school together and were acquaintances. Deputy Waxler informed Kuhn that Sergeant Vandemark was out of town and she didn't know when he would return.
 {¶ 4} Later in the afternoon, Sergeant Vandemark returned from another investigation and came out to speak with Kuhn. Sergeant Vandemark established that he was a police officer even though he was in plain clothing and that he was the boss of Deputy Waxler. Furthermore, Sergeant Vandemark again advised Kuhn of his rights. At approximately 2:30 p.m., Kuhn was returned to his vehicle by one of the Defiance County officers.
 {¶ 5} On May 9, 2004 at approximately 8:30 p.m., Sergeant Vandemark called Kuhn on the telephone and asked him if he would come back into the Sheriff's Office to speak with the officers again. Kuhn agreed. At approximately 9:10 p.m., Kuhn was advised of his Miranda rights by Sergeant Vandemark and he was further questioned and taken to the scene of the accident. Kuhn made an admission as to his involvement with the shooting of Cyrus and was arrested.
 {¶ 6} On May 14, 2004, Kuhn was indicted by the Defiance County Grand Jury on one count of aggravated murder, in violation of R.C. 2929.01(A) with specification, a felony in the first degree; one count of murder, in violation of R.C. 2929.02 with specification, a felony in the first degree; one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree; and one count of possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(a), a felony of the fifth degree. On August 19, 2004, Kuhn filed a motion to suppress. The motion hearing was held on October 20, 2004. On October 27, 2004, the trial court ordered the parties to file written closing arguments. The State filed their closing argument on November 12, 2004 and Kuhn filed his on November 17, 2004. On January 4, 2005, the trial court found that Kuhn's motion to suppress was without merit and overruled said motion by judgment entry.
 {¶ 7} On April 5-8, 2005, a jury trial was held. The jury found Kuhn not guilty of aggravated murder, murder, or voluntary manslaughter; however, he was found guilty of the lesser included charge of reckless homicide. The jury further found Kuhn guilty of the firearm specification. Kuhn was also found guilty of both tampering with evidence and possession of cocaine. A judgment entry reflecting the same was filed on April 13, 2005. On May 26, 2005, Kuhn was sentenced to a term of five years on the reckless homicide, three years on the firearm specification, five years on the tampering with evidence, to be served consecutively with one another, and a term of six months on the possession of cocaine, to be served concurrently. Therefore, Kuhn was sentenced to a total term of thirteen years. Kuhn was also ordered to pay a fine of $5,000.00 and restitution to the victim's family for funeral and burial expenses.
 {¶ 8} Kuhn filed his notice of appeal on June 28, 2005 raising three assignments of error with respect to his motion to suppress and his sentencing. On March 13, 2006, this Court dismissed the original appeal in Case No. 4-05-23 on the basis that there was no final appealable order pursuant to R.C. 2505.02
because the June 3, 2005 Judgment of conviction and sentence did not settle the restitution amount or the method of payment and there was nothing in the record that would make such amount ascertainable. On April 19, 2006, the trial court filed a judgment entry establishing the specific amount of restitution.
 {¶ 9} On May 15, 2006, Kuhn filed his notice of appeal raising the following assignments of error:
 First Assignment of Error THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULINGAPPELLANT'S MOTION TO SUPPRESS.
 Second Assignment of Error THE SENTENCE IS CONTRARY TO LAW.
 Third Assignment of Error THE FELONY SENTENCING STATUTES AS APPLIED PURUSANT (sic) TOSTATE V. FOSTER VIOLATE THE RETROACTIVE CLAUSE OF SECTION 28,ARTICLE II OF THE OHIO CONSTITUTION AND THE EX POST FACTO CLAUSEOF THE UNITED STATES CONSTITUTION.
 {¶ 10} Kuhn asserts in his first assignment of error that the trial court abused its discretion by overruling his motion to suppress.
 {¶ 11} Appellate review of a decision on a motion to suppress evidence presents a mixed question of law and fact. UnitedStates v. Martinez (C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Carter (1995),72 Ohio St.3d 545, 552, 651 N.E.2d 965. When reviewing a trial court's decision on a motion to suppress, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Dunlap (1995),73 Ohio St.3d 308, 314, 652 N.E.2d 988. We must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of the witnesses," and then independently review whether the trial court applied the correct legal standard.State v. Anderson (1995), 100 Ohio App.3d 688, 691,654 N.E.2d 1034.
 {¶ 12} In this case, the trial court found that Miranda
warnings were unnecessary prior to the statements made by Kuhn on either May 8, 2006 or May 9, 2006 and further, not withstanding the lack of necessity, appropriate Miranda warnings were, in fact, given to Kuhn. In addition, the trial court stated that pursuant to the issue of alleged coercion, deception or overreaching by law enforcement, the evidence demonstrates to the contrary that no such misconduct by law enforcement occurred. Even though Sergeant Vandemark and Kuhn were prior acquaintances, the trial court found that the evidence clearly demonstrated that Sergeant Vandemark advised Kuhn that he was a law enforcement officer, even though he was dressed in plain clothes, and informed him of the consequences as to any statements made by Kuhn. Furthermore, the trial court stated that notwithstanding Kuhn's "relatively low intelligence, the totality of the circumstances clearly demonstrate[d] to the court, by far more than a preponderance of the evidence, that Defendant's [Kuhn's] statements were voluntary and not impermissibly coerced by any misconduct of the law enforcement officers. Similarly, in addressing the voluntariness of Defendant's consent to search his truck and home, the evidence demonstrates such consent to have been voluntarily given under the totality of the circumstances."
 {¶ 13} At the suppression hearing, Deputy Waxler testified that she advised Kuhn of his Miranda rights upon arrival at the Sheriff's Office on May 8, 2004. Also, prior to commencing a subsequent interview with Sergeant Vandemark, Sergeant Vandemark re-advised Kuhn of his rights. Also, on May 9, 2004, Sergeant Vandemark advised Kuhn of his rights prior to any questioning. However, as the trial court stated, it is questionable whetherMiranda advisement was even necessary prior to the questioning on May 8, 2004 or May 9, 2004 because the evidence does not demonstrate "custodial interrogation" but rather appears to be a voluntary admission by Kuhn.
 {¶ 14} Furthermore, Kuhn's own testimony established that Kuhn had a true comprehension of his Miranda rights when the trial court made its own inquiry. During that exchange, Kuhn stated, "I understand about my rights." Then he proceeded to give accurate impressions about what it meant to have the right to be silent, that what he said would be used against him, that he had the right to counsel, and that counsel could be appointed if he could not afford it. Furthermore, the trial court asked Kuhn what it meant for him to consent to a search of his truck and home. Kuhn stated that he understood that when he signed the consent form he was saying it was okay for the officers to search his truck and home.
 {¶ 15} Based upon the testimony at the suppression hearing, we agree with the trial court that, in considering the totality of the circumstances, Kuhn's statements were voluntary and not impermissibly coerced by any misconduct of the law enforcement officers. Furthermore, the evidence demonstrates that Kuhn voluntarily consented to a search of his truck and home. Therefore, Kuhn's first assignment of error is overruled.
 {¶ 16} Kuhn's second assignment of error poses an issue concerning his felony sentencing. He alleges that his sentence is void because it is based upon statutes which have recently been found unconstitutional by the Ohio Supreme Court.
 {¶ 17} The Supreme Court of Ohio recently addressed constitutional issues concerning felony sentencing in State v.Foster, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856. InFoster, the Supreme Court of Ohio held that portions of Ohio's felony sentencing framework are unconstitutional and void, including R.C. 2929.14(B) requiring judicial findings that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crimes by the offender. Foster, 2006-Ohio-856, at ¶ 97, 103. Pursuant to the ruling in Foster, Kuhn's second assignment of error is sustained.
 {¶ 18} Kuhn alleges in his third assignment of error that the application of Foster to his case and sentence violates the ex post facto clause of the United States Constitution.
 {¶ 19} This Court has recently held that violations of the ex post facto clause were not properly before the Court because the defendant was yet to be resentenced in conformity with Foster
in State v. Pitts (2006), 3rd Dist. No. 1-06-02, 2006-Ohio-2796;State v. Sanchez (2006), 3rd Dist. No. 4-05-47, 2006-Ohio-2141; and State v. McKercher (2006), 3rd Dist. No. 1-05-83,2006-Ohio-1772. In each of those cases, the defendants were in the process of being remanded for resentencing in light of theFoster decision. Furthermore, a claim that rests upon future events that may not occur at all, or may not occur as anticipated, is not considered ripe for review. State ex rel.Keller v. Columbus (2005), 164 Ohio App.3d 648, at ¶ 20.
 {¶ 20} In this case, the issues that Kuhn raises regarding the ex post facto clause are not properly before us because Kuhn has yet to be re-sentenced. Thus, the third assignment of error is deemed moot.
 {¶ 21} Accordingly, Kuhn's first assignment of error is affirmed. His second assignment of error is sustained and the third assignment of error is deemed moot. Therefore, the April 19, 2006, Judgment of conviction and sentence entered in the Court of Common Pleas of Defiance County, Ohio is affirmed in part, reversed in part. Pursuant to the Foster decision, the matter is remanded for re-sentencing.
Judgment affirmed in part, reversed in part, and remanded forresentencing.
 Bryant, P.J., and Cupp, J., concur.