OPINION
{¶ 1} Defendant-Appellant Steven L. Estep ("Estep") appeals from the April 16, 2007 Judgment Entry of Sentence of the Court of Common Pleas, Seneca County, Ohio sentencing him to an indefinite prison term of 15 years to life for his conviction of Murder, a special felony in violation of Ohio Revised Code Section 2903.02(B).
 {¶ 2} This matter stems from events occurring on September 13, 2006 in Tiffin, Ohio. On this date, Estep was at the apartment of Melissa Brown, babysitting her daughter MeKenna while Melissa was at school. When Melissa called home to check in, Estep advised her that MeKenna was having difficulty breathing. At approximately 2:00 p.m. Melissa called 911 to request an ambulance for MeKenna. MeKenna was then transported by ambulance to Tiffin Mercy Hospital where a head scan was performed and it was determined that she had suffered a severe head trauma. MeKenna was subsequently life-flighted to Toledo St. Vincent Hospital where she died at 11:30 p.m. on September 14, 2006. On September 15, 2006 an autopsy was conducted in which the coroner determined that MeKenna died from a severe case of Shaken Baby Syndrome and ruled her death a homicide. *Page 3 
 {¶ 3} On September 27, 2006 a Seneca County Grand Jury returned an indictment charging Estep with Murder, a special felony in violation of R.C. 2903.02(B). The indictment provided, in relevant part, as follows:
 . . . Steven Estep did cause the death of MeKenna Brown as a proximate result of committing or attempting to commit and offense of violence that is a felony of the first or second degree and that is not a violation of R.C. 2903.03 or R.C. 2903.04, namely Endangering Children in violation of R.C. 2919.22(B)(1), (E)(2)(d), an offense of violence listed in R.C. 2901.01(A)(9)(a) that is a felony of the second degree, wherein Steven Estep did, recklessly abuse MeKenna Brown, a child under 18 years of age . . . and said violation of (B)(1) of R.C. 2919.22 resulted in serious physical harm to the child.
 {¶ 4} On October 11, 2006 Estep appeared for his arraignment via video from the Seneca County Jail. At the hearing Estep's attorney requested a competency evaluation and entered a plea of not guilty by reason of insanity on Estep's behalf. The court ordered that Estep was to be examined by the District V Forensic Diagnostic Center for an evaluation of his competency to stand trial.
 {¶ 5} On December 1, 2006 Estep appeared for a competency hearing wherein the parties stipulated to the findings of the psychological evaluation on the issue of competency. The court found Estep to be competent to stand trial and this matter proceeded to arraignment wherein Estep entered a plea of not guilty by reason of insanity to the charge contained in the indictment.
 {¶ 6} On January 25, 2007 Estep's attorney filed a motion to withdraw representation and motion to substitute counsel due to his limited experience with *Page 4 
Shaken Baby Syndrome. However, after conducting a hearing on this matter, the trial court denied said motions and instead appointed co-counsel to assist Estep's court-appointed attorney in his defense.[1]
 {¶ 7} On January 25, 2007 the Seneca County Department of Job and Family Services ("SCDJFS") filed a motion to quash a subpoena regarding records pertaining to MeKenna, Melissa Brown, and MeKenna's father Jason Risner, as well as a motion for protective orders pursuant to Crim.R. 16, R.C. 5153.17 and R.C. 2151.421(H)(1). On February 26, 2007 the trial court conducted a hearing on the motions and determined that the motion to quash was well taken as to the abuse, neglect, and dependency records of MeKenna since all records had already been provided in discovery. (See February 26, 2007 Judgment Entry). On March 8, 2007 the trial court conducted an in camera inspection of the other documents at issue, specifically the records of the SCDJFS involving neglect, dependency and abuse involving Melissa Brown or Jason Risner. After inspecting the records, the court found that the records were not relevant or necessary and that the confidentiality provisions of R.C. 5153.17 outweighed any disclosure.
 {¶ 8} On March 21, 2007 Estep filed a motion to suppress his statements and any evidence obtained as a result of those statements made to law enforcement officers alleging that his confession was not made voluntarily. The trial court *Page 5 
conducted hearings on Estep's motion to suppress on March 28 and April 5, 2007, and on April 12, 2007 the trial court entered Findings and issued a Judgment Entry denying Estep's motion to suppress.
 {¶ 9} On April 12, 2007 Estep entered into a written negotiated plea of no contest with consent to a finding of guilt to the offense of Murder, a special felony in violation of R.C. 2903.02(B). (See also Transcript of April 12, 2007 hearing). The trial court subsequently found Estep guilty of Murder.
 {¶ 10} On April 16, 2007 the trial court conducted Estep's sentencing hearing wherein the court found that Estep had been convicted of Murder, a special felony in violation of R.C. 2903.02(B). In its April 16, 2007 Judgment Entry of Sentence, the trial court sentenced Estep to an indefinite prison term of 15 years to life with credit for 114 days already served. The court also ordered Estep to pay restitution in the amount of $1,492.16 to the victim's mother as well as court costs.
 {¶ 11} Estep now appeals, asserting three assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS HIS STATEMENTS TO LAW ENFORCEMENT.
 ASSIGNMENT OF ERROR NO. 2 THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS. *Page 6 
 ASSIGNMENT OF ERROR NO. 3 THE TRIAL COURT ERRED IN GRANTING THE MOTION TO QUASH THE SUBPOENA DUCES TECUM PURSUANT TO O.R.C. 5153.17.
 Assignment of Error No. 1 {¶ 12} In his first assignment of error, Estep alleges that the trial court erred in denying his motion to suppress the statements and evidence obtained as a result of those statements made to law enforcement officers as his statements were not made voluntarily.
 {¶ 13} When a trial court considers a motion to suppress, it must make both factual and legal findings. State v. Jones 9th Dist. No. 20810, 2002-Ohio-1109. At a suppression hearing, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses and the weight to be given the evidence presented. See State v.Carter (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965; State v.Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972; State v.Fairley, 3rd Dist. No. 5-03-41, 2004-Ohio-2616 at ¶ 16. Appellate review of a decision on a motion to suppress presents a mixed question of law and fact. State v. Kuhn, 3rd Dist. No. 4-06-16, 2006-Ohio-5390 citing United States v. Martinez (C.A.11, 1992),949 F.2d 1117, 1119. When reviewing a trial court's decision on a motion to suppress, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v.Dunlap (1995), 73 Ohio St.3d 308, 314, *Page 7 652 N.E.2d 988. We must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of witnesses[,]" and then independently review whether the trial court applied the correct legal standard. State v. Anderson (1995), 100 Ohio App.3d 688, 691,654 N.E.2d 1034.
 {¶ 14} Prior to addressing the merits of Estep's first assignment of error, we note that the prosecution is prohibited from using any statements made by a defendant, whether exculpatory or inculpatory, during a custodial interrogation unless proper Miranda warnings have been given.[2] State v. Andrews, 3rd Dist. No. 1-05-70,2006-Ohio-3764 citing Miranda v. Arizona (1966), 384 U.S. 436, 444,86 S.Ct. 1602, 16 L.Ed.2d 694; see also State v. Mason (1998),82 Ohio St.3d 144, 153, 694 N.E.2d 932. A person is considered in custody for purposes of Miranda when he is placed under formal arrest or his freedom of action is restrained to a degree associated with a formal arrest.Andrews, supra at ¶ 19 citing State v. Simpson, 10th
Dist. No. 01AP-757, 2002-Ohio-3717 (citing Minnesota v. Murphy (1984),465 U.S. 420, 434, 104 S.Ct. 1136, 79 L.Ed.2d 409). "In judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a `reasonable person would have believed that he was not free to leave.'" State v. Gumm (1995),73 Ohio St.3d 413, 429, 653 N.E.2d 253. In *Page 8 
contrast, general on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process ordinarily does not constitute a custodial interrogation.Miranda, 384 U.S. at 477.
 {¶ 15} In support of his first assignment of error, Estep alleges that his statements were obtained involuntarily during the police investigation of the present case, thus they were inadmissible as a matter of law. Specifically, Estep alleges that he was in custody during the first interview, but was not informed of that fact prior to speaking with the officers.
 {¶ 16} On September 13, 2006 Estep volunteered to accompany Sergeant Brian Hescht ("Hescht") of the Seneca County Sheriffs Department to the Sheriffs Office to be interviewed. Estep was read his Miranda rights, initialed each statement contained in the Miranda rights, and signed a waiver of those rights. (See State's Exhibit 1, attached to Transcript of the Suppression Hearing ("Supp. Tr."), March 28, 2007). Estep was then interviewed by Sheriffs Detective Kevin Reinbolt ("Reinbolt") and Officer Ron Green ("Green") of the Seneca County Prosecutor's Office. Estep gave several different stories before finally confessing to shaking MeKenna. Estep stated that MeKenna would not stop crying and stated that he shook her back and forth. He stated that MeKenna still did not stop crying and that after he shook her again, she stopped crying. Estep stated that he then set MeKenna down, but noticed her nose was bleeding, so *Page 9 
he tried to stop it. He stated that approximately 20-30 minutes after he shook MeKenna, Melissa called in to check on her. During the course of the initial interview, Estep wrote two voluntary statements as to his account of the incident. (See State's Exhibits 3 and 4, attached to Supp. Tr.).
 {¶ 17} On September 14, 2006 Estep was re-interviewed by Green and Reinbolt wherein he was again read his Miranda rights, initialed each statement contained in the Miranda rights, and signed a waiver of those rights. (See State's Exhibit 2, attached to Supp. Tr.). Estep was then informed of the search warrant that had been executed at the apartment where the incident took place and questioned about the suspected splatters of blood and vomit found in the apartment. Estep gave another account of what happened and stated that he was working on a paper for school in the living room when MeKenna started fussing and throwing a fit in her bedroom. He stated that he held her down with his hand over her chest and belly and then picked her up and spanked her twice while holding her. Estep stated that he then walked around MeKenna's bedroom with her and shook her, but when she did not settle down, he shook her again, and that was when she started bleeding from her nose. Estep stated that he laid MeKenna down and tried to stop the bleeding and then attempted CPR on her. He stated that Melissa then called and he spoke to her and advised her that MeKenna was bleeding from her nose and was having trouble breathing. *Page 10 
 {¶ 18} At the suppression hearings the State presented the testimony of Sergeant Reinbolt who testified that he recited Miranda warnings and secured a written waiver of rights from Estep prior to engaging in questioning during each recorded interview. Reinbolt's testimony was consistent with the evidence presented in the taped interviews.
 {¶ 19} Based on the foregoing, we find that Estep's argument that he was in custody for both interviews is without merit and immaterial as a matter of law as Miranda warnings were recited prior to both interviews and Estep waived his Miranda rights prior to both interviews, regardless of whether or not Estep was in custody.
 {¶ 20} In support of his first assignment of error, Estep also alleges that the law enforcement officers improperly induced him to make statements about how he caused MeKenna's death.
 {¶ 21} In determining whether a defendant's confession was involuntarily induced, the court should consider the totality of the circumstances. State v. Greeno, 3rd Dist. No. 13-02-46, 2003-Ohio-3687 at ¶ 21 citing State v. Bays (1999), 87 Ohio St.3d 15,22, 716 N.E.2d 1126. Circumstances to be considered include the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.Bays, *Page 11 87 Ohio St.3d at 22; see also State v. Edwards (1976), 49 Ohio St.2d 31,358 N.E.2d 1051 at paragraph two of the syllabus; Mason, supra at 154.
 {¶ 22} We note that the Supreme Court of Ohio has determined that "[t]he use of an `inherently coercive tactic' during interrogation is a prerequisite to a finding of involuntariness. Such tactics include,e.g., physical abuse, threats, or deprivation of food, medical treatment, or sleep." State v. Cooey (1989), 46 Ohio St.3d 20, 28,544 N.E.2d 895. "[T]he question of voluntariness is a question of law. Consequently, an appellate court must arrive at its own conclusion as to whether a given confession was voluntary by reviewing the facts of the case." Greeno, supra at ¶ 21 citing State v. Weeks, 3rd
Dist. No. 8-2000-07, 2000-Ohio-1928, quoting State v. Jett (Mar. 31, 1998), Portage App. No. 97-P-0023, unreported.
 {¶ 23} At the suppression hearings the State presented the testimony of Sergeant Hescht who testified that he initially made contact with Estep at the Willow Creek Apartments at approximately 3:20 p.m. on September 13, 2006. Hescht testified that Estep invited him into the apartment and they spoke briefly. Hescht testified that he asked Estep if he could come to the Sheriffs Office to speak to an officer about what had happened, and Estep stated that he would. Our review of Hescht's testimony reveals that he did not make any promises or threats *Page 12 
and did not exert any compulsion or coercion in transporting Estep to the Seneca County Sheriffs Office prior to the first interview.
 {¶ 24} Additionally, our review of Estep's videotaped interviews at the Seneca County Sheriffs Office does not reveal any coercion on the part of the law enforcement officers. The videotapes do not reveal any evidence that the officers engaged in any inducements, threats, or deception which could be deemed improper. Although Estep was encouraged repeatedly to tell the truth, there is no evidence of physical deprivation or mistreatment. We note that admonitions to tell the truth or "badgering" the accused for the truth do not rise to the level of making a statement involuntary. See State v. Williams (Nov. 12, 1996), 3rd Dist. No. 1-96-24, unreported citing State v.Wiles (1991), 59 Ohio St.3d 71, 81, 571 N.E.2d 97. In the present case, the law enforcement officers were merely admonishing Estep to tell the truth and to tell them the whole story.
 {¶ 25} Accordingly, we find that the testimony and evidence presented at the suppression hearings demonstrates that the law enforcement officers involved in speaking with Estep properly secured voluntary statements as part of the investigation of this case. We also find that Estep was in no way improperly induced to make any statements to the law enforcement officers.
 {¶ 26} Based on the foregoing, we agree with the trial court that, in considering the totality of the circumstances, Estep's statements were made *Page 13 
voluntarily and were not impermissibly coerced by any misconduct of the law enforcement officers investigating this case. Therefore, as there is nothing in the record to support Estep's allegations as to his first assignment of error, Estep's first assignment of error is overruled.
 Assignment of Error No. 2 {¶ 27} In his second assignment of error, Estep alleges that his trial counsel was ineffective in advising him to enter a plea of no contest to the indicted charge of Murder, thus violating his rights under the United States and Ohio Constitutions.
 {¶ 28} The Supreme Court of Ohio has adopted a two-part test for determining claims of ineffective assistance of counsel in criminal prosecutions. See State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, at paragraph two of the syllabus, (following Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct.2052, 80 L.Ed.2d 674). Under this test, "[Appellant] must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."' State v. Jones, 3rd Dist. No. 02-2000-07, 2000-Ohio-1879 quoting Strickland, 466 U.S. at 688, 694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley, 42 Ohio St.3d at 142. *Page 14 
The second prong regarding reasonable probability requires a probability sufficient to undermine the confidence in the outcome of the trial.Id.
 {¶ 29} We note that Appellant bears the burden of proof on the issue of counsel's ineffectiveness, since in Ohio a properly licensed attorney is presumed competent. State v. Calhoun (1999), 86 Ohio St.3d 279, 289,714 N.E.2d 905. Moreover, Appellant must overcome a strong presumption that the challenged action constitutes trial strategy. State v.Carter (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 905. Therefore, in reviewing Estep's counsel's performance, we must accord deference to counsel's trial tactics and cannot examine counsel's choices through hindsight. See Strickland, 466 U.S. at 689.
 {¶ 30} Regarding his claim of ineffective assistance of counsel, Estep specifically alleges that he was denied effective assistance of counsel because his counsel advised him to plead no contest to the charge of Murder without securing something more than the right to appeal the trial court's ruling on the motion to suppress his statements, and because his counsel failed to place anything on the record to explain the decision to plead no contest.
 {¶ 31} On April 12, 2007 the trial court conducted a hearing wherein it rendered a decision denying Estep's motion to suppress. After a one hour recess, this matter proceeded to a change of plea hearing. The trial court first conducted a competency examination of Estep wherein the court asked Estep numerous *Page 15 
questions regarding his health, mental state, and understanding of the proceedings. The court also asked Estep if he was satisfied with his attorneys' representation in this case; to which he replied that he was.[3] The court subsequently determined that Estep was competent for the purposes of the change of plea proceedings.
 {¶ 32} The trial court then proceeded to address Estep's change of plea from not guilty to no contest with consent of finding of guilt.[4] The trial court reviewed the terms of the plea agreement in detail with Estep, fully informed Estep of the consequences of entering a no contest plea, ensured that Estep understood all of the consequences of his plea, and ensured that Estep's plea was made knowingly and voluntarily. (See April 12, 2007 Transcript, pp. 17-36, 42). During the review of the plea agreement, the court again asked Estep if he was satisfied with the advice and competence of his attorneys, to which Estep again replied that he was. The court also advised Estep of his right to appeal a maximum sentence and his right to appeal the court's ruling on his motion to suppress.
 {¶ 33} When asked by the court if there was anything they would like placed on the record, Estep's counsel requested that the court "incorporate the *Page 16 
suppression hearing from March 28, 2007 and April 5, 2007 for purposes of the appeal to this no contest plea as well." The court granted said request. Estep and his attorneys then signed the written plea of no contest with consent to the finding of guilt which the court accepted.
 {¶ 34} Based on Estep's counsel's request to incorporate and preserve the suppression hearing for purposes of an appeal, counsel may have reasonably believed that a no contest plea would be the best strategy for an appeal of both the suppression hearing and the trial court's sentence. See Crim.R. 12(I). Even assuming that Estep's counsel had advised him to enter a plea of no contest for the purpose of preserving his right to appeal the court's ruling on the motion to suppress, that advice does not necessarily reflect ineffective assistance of counsel and may be considered trial strategy. See State v. Carter andStrickland v. Washington, supra.
 {¶ 35} Upon review of the record, we conclude that the evidence in this case does not establish that Estep's trial counsel provided ineffective assistance of counsel or that Estep entered a plea of no contest based upon deficient advice from counsel. In fact, we note that the record reflects Estep's counsel's zealous and thorough representation of Estep's interests throughout the duration of this case. Therefore, we find that the actions taken by Estep's counsel do not fall below an *Page 17 
objective standard of reasonable representation. Nor, in this case, did they create any reasonable probability of a different outcome. Additionally, we find that any decision to advise Estep to enter a plea of no contest was presumably part of counsel's legal strategy, and we find no ineffective assistance with respect thereto. Accordingly, Estep's second assignment of error is overruled.
 Assignment of Error No. 3 {¶ 36} In his third assignment of error, Estep alleges that the trial court erred in granting the motion to quash the subpoena duces tecum pursuant to R.C. 5153.17. Specifically, Estep contends that he was entitled to discovery and review of the SCDJFS's records regarding claimed earlier reports of abuse, neglect, and dependency involving Melissa Brown and Jason Risner, the parents of the victim in the present case.
 {¶ 37} Pursuant to Crim.R. 16(B)(1)(f), a criminal defendant is entitled to discovery of any evidence that is "favorable to the defendant and material to either guilt or punishment." However, it is well settled that the decision to admit evidence rests within the sound discretion of the trial court. State v. Williams (1983),4 Ohio St.3d 53, 446 N.E.2d 444. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion *Page 18 
standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 38} In the present case, Estep sought discovery and review of records kept by the SCDJFS relating to the parents of the victim. However, departments of human services and children's services boards are required to keep records and reports of alleged child-abuse or neglect confidential. Johnson v. Johnson (1999), 134 Ohio App.3d 579,583, 731 N.E.2d 1144 citing R.C. 2151.99.
 {¶ 39} R.C. 2151.421(H)(1) sets forth the relevant confidentiality rule which provides as follows:
 . . . a report made under this section is confidential. The information provided in a report made pursuant to this section and the name of the person who made the report shall not be released for use, and shall not be used, as evidence in any civil action or proceeding brought against the person who made the report. In a criminal proceeding, the report is admissible in evidence in accordance with the Rules of Evidence and is subject to discovery in accordance with the Rules of Criminal Procedure.
 {¶ 40} Based on the language of this statute, the confidentiality of such records and reports is not absolute, and there are exceptions to the confidentiality rule set forth in R.C. 2151.421(H)(1).Johnson, 134 Ohio App.3d at 583. For example, R.C. 5153.17 provides as follows:
 The public children services agency shall prepare and keep written records of investigations of families, children, and foster homes, and of the care, training and treatment afforded children, and shall prepare and keep such other records as are *Page 19 required by the department of job and family service. Such records shall be confidential, but, except as provided by division (B) of section 3107.17 of the Revised Code, shall be open to inspection by the agency, the director of job and family services, and the director of the county department of job and family services, and by other persons upon the written permission of the executive director.
 {¶ 41} Additionally, in the criminal context, the United States Supreme Court has acknowledged that under certain circumstances, records of the children's services agency must be made available to the trial court for an in camera inspection. Johnson, 134 Ohio App.3d at 584. InPennsylvania v. Ritchie (1987), 480 U.S. 39, 107 S.Ct. 989,94 L.Ed.2d 40, the United States Supreme Court held that a criminal defendant's right to a fair trial entitles the defendant to an in camera review by the trial court of the confidential records in order to determine whether the records contain evidence material to the accused's defense. Accordingly, "a court may conduct an in camera inspection of child-abuse records or reports and also has the inherent power to order disclosure of such records or reports where (1) the records or reports are relevant to the pending action, (2) good cause for such a request has been established by the person seeking disclosure, and (3) where admission of the records or reports outweighs the confidentiality considerations set forth in R.C. 5153.17 and R.C. 2151.421(H)(1). Johnson, supra at 585. *Page 20 
 {¶ 42} In the present case, the trial court conducted an in camera inspection of the SCDJFS's records regarding reports of abuse, neglect, and dependency specifically involving Melissa Brown and Jason Risner. (See Transcript of March 8, 2007 In Camera Inspection Hearing and March 8, 2007 Judgment Entry). Although Estep alleges on appeal that "the record is not clear that the trial court conducted the in camera inspection and [instead] relied on the representation of the Department of Job and Family Services Attorney" we find this allegation to be without merit.
 {¶ 43} Prior to the in camera inspection, the trial court stated:
 The Court will go in chambers, review all of them and then make its findings involving this matter using the Johnson test, which is a Third District Court of Appeals Case. And the Court will review each and every record in camera to determine the relevancy and necessity of the records and whether their admission in this case — not admission, but their discovery purposes outweigh any confidentiality provisions of section 5153.17.
 {¶ 44} We note that Estep did not object to the process or procedure used by the trial court in its in camera inspection of the records. (See March 8, 2007 Transcript, pp. 6-7). Under these circumstances, we question whether this issue was properly preserved for appellate review within the context of a no contest plea. However, in the interest of justice, we elect to address the merits of Estep's third assignment of error. *Page 21 
 {¶ 45} After completing the in camera inspection, the trial court stated as follows:
 The Court has reviewed those records in light of the test set forth in Johnson v. Johnson . . . The Court is of the opinion — it does not even need to get to the second prong of the Johnson test. The first prong is determinative in that these records that the Court has reviewed are not relevant and necessary to be involved in this case, and they will not, be admitted or be disclosed because their confidentiality provisions of the law clearly outweigh any discovery or admission or relevancy or necessity of these records. And therefore, they will be sealed by the Court.
 {¶ 46} Our review of the record reveals that the trial court clearly conducted an appropriate in camera review of the records in accordance with the procedures outlined in Johnson v. Johnson, supra. Therefore, find that the trial court did not abuse its discretion in granting the motion to quash the subpoena duces tecum. Accordingly, Estep's third assignment of error is overruled.
 {¶ 47} Based on the foregoing, the April 16, 2007 Judgment Entry and Sentence of the Seneca County Court of Common Pleas is affirmed.
Judgment affirmed.
 ROGERS, P.J., and WILLAMOWSKI, J., concur. r
[1] At this January 31, 2007 hearing, Estep also voluntarily and knowingly waived all of his rights to a speedy trial and executed a signed time waiver which was accepted by the trial court.
[2] Pursuant to Miranda v. Arizona (1966), 384 U.S. 436, 47986 S.Ct. 1602, 16 L.Ed.2d 694, a suspect in police custody "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if cannot afford and attorney one will be appointed for him prior to any questioning if he so desires."
[3] The trial court also asked Estep's attorneys if they were "satisfied that Mr. Estep is competent to understand his changes of plea from not guilty to a plea of no contest with the consent of finding of guilt" to which they each replied, "yes." (See April 12, 2007 Transcript p. 15).
[4] During the April 12, 2007 hearing, Estep was given a "plea report" which stated that "Defendant has been given a proposed plea of no contest with consent to finding of guilt with joint sentence recommendation in this case" and "Defendant accepts the proposed plea of no contest with consent to finding of guilt with joint sentence recommendation." This plea report was signed by Estep, both of his attorneys, and the prosecutor in open court and addressed by the court on the record. (See April 12, 2007 Transcript pp. 16-18). *Page 1