[Cite as *State v. Hoey*, 2024-Ohio-5399.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

     Plaintiff-Appellant

-vs-

DARRON E. HOEY

     Defendant-Appellee

JUDGES:
Hon. John W. Wise, P.J.
Hon. Craig R. Baldwin, J.
Hon. Andrew J. King, J.

Case No. 2024 CA 00020


O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Lancaster Municipal Court, Case No. 24 TRC 886 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | November 14, 2024 |


APPEARANCES:

| For Plaintiff-Appellant | For Defendant-Appellee |
|---|---|
| ANDREW D. SEMELSBERGER | AARON R. CONRAD |
| LAW DIRECTOR | CONRAD/WOOD |
| 136 West Main Street | 120 East Main Street |
| P. O. Box 1008 | Suite 200 |
| Lancaster, Ohio 43130 | Lancaster, Ohio 43130 |

*Wise, P. J.*

{¶1}  Plaintiff-Appellant State of Ohio appeals the May 18, 2024, decision of the Lancaster Municipal Court, Fairfield County, Ohio, granting Defendant-Appellee's Motion to Suppress.

### STATEMENT OF THE FACTS AND CASE

{¶2}  The relevant facts and procedural history are as follows:

{¶3}  On Sunday, February 3, 2024, at approximately 12:47 A.M., Officer Hanson Holter with the Lancaster Police Department was on duty headed towards General Sherman Junior High School on Election House Road, Greenfield Township, Fairfield County, Ohio, to conduct a business/school check when he passed Appellant's vehicle. Appellant's vehicle was sitting near a stop sign, running, and had its headlights on. (Supp. T. at 10). It was positioned such that the passenger-side tires were in the grass off the roadway and the driver-side tires were on the roadway partially blocking a lane of travel. *Id.* Officer Holter observed the silhouette of a driver, Appellant, with his head down in the vehicle. (Supp. T. at 11).

{¶4}  Officer Holter continued to General Sherman Junior High School and was there for approximately five minutes. While conducting the business/school check, the officer observed Appellant's vehicle still in the same location. (Supp. T. at 12). Believing Appellant was either asleep or passed out, Officer Holter decided to conduct a welfare check on Appellant if his vehicle was still there after the check. *Id.*

{¶5}  After the check the vehicle was still there, so Officer Holter drove his cruiser behind Appellant's vehicle and activated his cruiser's overhead lights. (Supp. T. at 12). Appellant then backed up his vehicle towards Officer Holter's cruiser and drove forward,

crossing over Election House Road into the oncoming lane of travel. At this time, Officer Holter employed an air horn to get Appellant to move over to the right side of the roadway. *Id.* Appellant moved his vehicle accordingly. Upon approaching the vehicle, Officer Holter asked Appellant why he was stopped in the roadway, to which Appellant replied that he was on his phone. (Supp. T. at 13). Appellant was not holding his phone. *Id.* Officer Holter then asked Appellant for identification and Appellant produced his ID, along with his social security card. Officer Holter noticed that Appellant's speech was slurred, and he smelled the odor of alcohol coming from Appellant as he spoke. (Supp. T. at 15). Appellant initially admitted to having consumed a couple drinks. *Id.* Officer Holter also observed that Appellant's eyelids were droopy. *Id.*

{¶6} When asked where he had been coming from, Appellant initially stated "town" but could not recall where. Later, Appellant stated he had been coming from Locker 8, a bar in Lancaster. Appellant fumbled with papers in his vehicle. Appellant was also unsure of the time: he believed it was 11:00 P.M. when it was actually 12:50 A.M., but also stated he was at Locker 8 from 9:00 P.M. to 12:00 A.M. Although Appellant admitted initially to having consumed only a couple drinks, he later admitted to two, then three, then possibly four beers.

{¶7} Because the location of the stop was outside of the city limits of Lancaster, Officer Holter called for deputies with the Fairfield County Sheriff's Office. Sergeant Austin Schorr and Deputy Silvia arrived and Officer Holter conferred with them, sharing his interactions with, and observations of, Appellant thus far.

{¶8} Sergeant Schorr then spoke with Appellant during which time Appellant told him that he was headed home from Locker 8 where he had a couple drinks. (Supp. T. at

42). Sgt. Schorr smelled a slight odor of alcohol coming from Appellant's vehicle. *Id.* Sgt. Schorr asked Appellant whether he would perform field sobriety testing and Appellant agreed. (Supp. T. at 45). However, the deputies then chose to not administer field sobriety testing, instead deciding to take Appellant to the station for a breath test.

{¶9} At the suppression hearing Sgt. Schorr initially testified he did not allow Appellant to submit to field sobriety tests because Appellant was unsteady on his feet as he exited the vehicle and so for safety reasons he was not permitted to submit to any SFSTs. (Supp. T. at 45). However, Sgt. Schorr later admitted that, in fact, the decision not to allow Appellant to submit to SFSTs was decided prior to Appellant exiting the vehicle and had nothing to do with any safety reasons. Rather, the decision not to administer the SFSTs to Appellant at that time was because Deputy Silvia did not feel comfortable administering the SFSTs. (Supp. T. at 48). Sgt. Schorr admitted that he is trained to administer SFSTs as part of an OVI investigation, however, he did not do so in this case. (Supp. T. at 49).

{¶10} Sgt. Schorr then told Appellant to roll up the driver-side window, turn off and exit the vehicle, and hand his keys to the deputies. (Supp. T. at 45-51). Appellant was then ordered into Deputy Silvia's cruiser, and his truck was then towed from the scene. (Supp. T. at 49-51). Sgt. Schorr testified that Appellant was detained at this time, but not under arrest. (Supp. T. at 52). Appellant was then transported to the police station and according to Deputy Silvia's written narrative regarding this incident, Appellant was read BMV Form 2255 prior to submitting to a breath test. (Supp. T. at 53-54).

**{¶11}** Appellant Darron E. Hoey was arrested for operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI"), in violation of R.C. §4511.19(A)(1)(a), a misdemeanor of the first degree.

**{¶12}** On February 14, 2024, Appellant filed a "Motion to Suppress" in the trial court alleging, *inter alia*, that there was no probable cause to arrest him.

**{¶13}** On February 21, 2024, the State filed an additional charge: Count B, OVI, in violation of R.C. §4511.19(A)(1)(d), a misdemeanor of the first degree.

**{¶14}** On March 20, 2024, the trial court held an oral hearing on Appellant's motion to suppress. The State presented Officer Holter as a witness. The trial court bifurcated the hearing upon the State's request.

**{¶15}** On April 3, 2024, the trial court held the second part of the oral hearing on Appellant's motion to suppress. The State presented Officer Holter and Sergeant Schorr as witnesses. The State also admitted the video footage from the body cameras of both Officer Holter and Sgt. Schorr as exhibits. At the conclusion of the hearing, the trial court instructed the parties to file closing argument briefs.

**{¶16}** On April 19, 2024, both the State and Appellant filed closing argument briefs.

**{¶17}** By Judgment Entry filed May 10, 2024, the trial court found that, although there was reasonable suspicion for the officer to expand the scope of the stop into an OVI investigation, the deputies did not have probable cause to arrest Appellant for OVI.

**{¶18}** Appellant State of Ohio now appeals.

**ASSIGNMENTS OF ERROR**

**{¶19}** "I. THE TRIAL COURT ERRED IN GRANTING HOEY'S MOTION TO SUPPRESS WHEN IT FOUND THAT THERE WAS NO PROBABLE CAUSE FOR THE DEPUTIES TO ARREST HOEY FOR OVI."

**I.**

**{¶20}** Appellant State of Ohio herein argues that the trial court erred in granting Defendant-Appellee's motion to suppress. We disagree.

**STATE'S RIGHT TO APPEAL**

**{¶21}** A court of appeals has jurisdiction to entertain the state's appeal from a trial court's decision to suppress evidence only where the state has complied with Crim.R. 12(K). *State v. Perez*, 2005-Ohio-1326, ¶ 12 (1st Dist.), *citing State v. Buckingham*, 62 Ohio St.2d 14 (1980), syllabus (interpreting former Crim.R. 12(J) ).

**{¶22}** Crim.R. 12(K) states in pertinent part:

When the state takes an appeal as provided by law from an order suppressing or excluding evidence, the prosecuting attorney shall certify that both of the following apply:

(1) The appeal is not taken for the purpose of delay;

(2) The ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

The appeal from an order suppressing or excluding evidence shall not be allowed unless the notice of appeal and the certification by the

prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion.

\* \* \*

**{¶23}** Our review of the record reveals a certifying statement timely filed by the prosecutor as outlined in Crim.R. 12(K). We therefore have jurisdiction to proceed to the merits of this appeal.

### STANDARD OF APPELLATE REVIEW

**{¶24}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308 (1995); *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *Burnside* at ¶ 8. Once this court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *Id.,* citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997); *see generally United States v. Arvizu*, 534 U.S. 266 (2002). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas v. United States*, 517 U.S. 690 (1996). Due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 698.

**{¶25}** Here the State agrees that Appellant was placed under arrest "when Sergeant Schorr took possession of the keys to Hoey's vehicle." (State's brief at 11).

{¶26} Probable cause to arrest focuses on the prior actions of the accused. Probable cause exists when a reasonable prudent person would believe that the person arrested had committed a crime. *State v. Timson,* 38 Ohio St.2d 122 (1974). A determination of probable cause is made from the totality of the circumstances. *Atwell v. State,* 35 Ohio App.2d 221 (1973), paragraph two of the syllabus. As the United States Supreme Court stated when speaking of probable cause "we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life in which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160 (1949).

{¶27} In determining whether probable cause exists to arrest an individual for driving under the influence of alcohol, "the court must examine whether, at the moment of the arrest, the officer had knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving under the influence of alcohol." *State v. Medcalf,* 111 Ohio App.3d 142 (4th Dist.1996). "The arrest merely has to be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol." *State v. Eustis*, 2008-Ohio-5955, ¶11 (5th Dist.), citing *State v. Van Fossen,* 19 Ohio App.3d 281 (10th Dist.1984). *Accord State v. Pitroff,* 2020-Ohio-2752, ¶ 15 (5th Dist.).

{¶28} Probable cause to arrest may exist in the absence of field sobriety tests results if there is evidence "that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes,

slurred speech, and difficulty walking." *State v. Judy,* 2008-Ohio-4520, ¶ 27 (5[th] Dist.), citing *Oregon v. Szakovits,* 32 Ohio St.2d 271 (1972).

**{¶29}** In its May 10, 2024, entry granting Appellant's motion to suppress, the trial court found Officer Holter had probable cause to stop Appellant and that reasonable suspicion existed to expand the investigation to perform field sobriety tests, but found once the investigation expanded, the information gathered by the Sgt. Schorr failed to give him probable cause to arrest. The trial court also found that "[h]ad Defendant refused to perform SFSTs, rather than Schorr rescinding the offer of SFSTs prior to the Defendant surrendering his keys, the Court would consider that fact in the totality of circumstances analysis, but the fact that Schorr and Silvia refused to conduct SFSTs, as shown in State's Exhibit 2, the Court is left with no evidence to analyze once the Defendant surrendered his keys to Schorr." (5/10/2024 JE at 5).

**{¶30}** The State herein argues Sgt. Schorr had probable cause to arrest regardless of the lack of field sobriety tests. In support, the state cites *State v. Homan,* 89 Ohio St.3d 421 (2000), *superseded by statute on other grounds, State v. Boczar*, 2007-Ohio-1251, which determined, in the absence of field sobriety test results, an odor of alcohol, an admission of drinking, erratic driving, and red, glassy eyes could support a finding of probable cause to arrest for OVI. *Homan* at 427.

**{¶31}** The State also cites *State v. Royster,* 5th Dist. Stark No. 1997CA00372 (1998), wherein this Court held "[i]n the case of a common investigation, the knowledge of one officer is the knowledge of all, and the collective knowledge of all the investigating officers, and the available objective facts, are the criteria to be used in assessing

probable cause", citing *United States v. Stratton* (C.A.1972), 453 Fed.2d 36, 37, cert. denied, 405 U.S. 1069.

**{¶32}** Here, Sgt. Schorr did not observe erratic driving or red, glassy eyes. He also testified that he only observed a "very slight" odor of alcohol. (Supp. T. at 42). While he testified that he observed that Appellant's speech was delayed and "somewhat slurred", he admitted on cross-examination, following the playing of his body-cam video, that Appellant answered all questions within one second or less. (Supp. T. at 41, 42, 51).  He further admitted that these were the only clues of impairment he observed prior to asking Appellant to exit his vehicle. *Id.* He did not testify that he considered any of Officer Holter's observations relative to the stop.

**{¶33}** It should also be noted that Sgt. Schorr changed his testimony as to the reason the SFSTs were not administered to Appellant, initially testifying on direct examination:

> A:      Well, once he stepped out of the vehicle, he was unstable. I was a little concerned about him falling. And so when she goes -- asks to just take him down to do the breathalyzer, I was perfectly fine with that due to the safety concern to him falling. You know, no matter what state, I don't want somebody to get hurt. You know, falling when it's 15 degrees on the pavement is not a real preferred thing.

**{¶34}** (Supp. T. at 45).

**{¶35}** However, on cross-examination, Sgt. Schorr admitted to not being truthful:

> Q.      Sgt., was your testimony today, was that just a mistake or you're not being honest?

A.    About what, sir?

Q:    The reason why you didn't administer field sobriety tests.

A:    I apologize if that was misconstrued, but obviously on the video, Deputy Sylvia goes, you know, I'd rather take him down, I don't feel comfortable and I agreed to it. My mistake.

Q:    So your testimony earlier that the reason you did not administer field sobriety tests to my client who was wanting to take them, you indicated because when he stepped out he was unstable on his feet and you felt it was not safe to administer those, that was completely wrong, correct?

A:    No, sir, that's still correct.

Q:    Sergeant, do you need to see the video again?

A:    No, sir.

Q:    I'm going to remind you, you are under oath.

A:    Yes, sir.

Q:    Is it your truthful, honest testimony that the reason you didn't administer field sobriety tests is because my client was unstable when he got out?

A:    Sir - -

Q:    Yes or no. Is that the reason you didn't administer field sobriety tests because when he stepped out he was unstable?

A:    No, sir, that was not.

Q:    So your testimony earlier was not correct, was it?

A:　　　No, sir.

Q:　　　Okay, thank you. And, in fact, the reason you didn't administer the field sobriety tests even though my client wanted to take them is because the deputy who was the one making the decisions in this case didn't feel comfortable administering field sobriety tests, correct?

A:　　　That is correct.

**{¶36}** (Supp. T. at 47-48).

**{¶37}** This Court recently considered a similar appeal by the state regarding the issue of probable to cause to arrest. In *State v. Martin*, 2023-Ohio-2789 (5th Dist.), this Court found that at the time of arrest, the state trooper did not have knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that the Appellant was driving under the influence of alcohol. In the *Martin* case, the Appellant smelled of alcohol, admitted to drinking, and committed two minor traffic violations. There was no evidence of erratic driving, he pulled over promptly and legally. He did not have red, glassy, bloodshot eyes. When he exited the vehicle, he did not sway or stumble. His speech to questions and instructions was clear and intelligible. He was polite and cooperative and followed instructions. His behavior did not show indicia of impairment. Because of a lack of indicia at the time of arrest, we found that the trooper lacked probable cause to arrest Martin for OVI.

**{¶38}** *See also, State v. Hopp*, 2016-Ohio-8027, ¶ 11 (9th Dist.) (concluding that probable cause did not exist where there was no indication of erratic driving and defendant's speech was only slightly slurred); *State v. Kennard*, 6th Dist. Huron No. H-01-006 (2001) (the time of the stop, the moderate to strong odor of alcohol about her

person, and Kennard's admission to drinking one beer, were insufficient to give rise to a reasonable, articulable suspicion that Kennard was intoxicated); *State v. Stricklin*, 2012-Ohio-1877, ¶ 12 (6th Dist.) "[t]raffic violations of a de minimus [sic] nature, combined with a slight odor of an alcoholic beverage, and an admission of having consumed a 'couple' beers, are not sufficient to support a reasonable and articulable suspicion of DUI."); *State v. Watkins*, 2021-Ohio-1443, ¶¶ 33-37 (6th Dist.); (bloodshot and glassy eyes at approximately 3:00 a.m., an odor of alcohol, and an admission to having had one glass of wine did not provide trooper with reasonable, articulable suspicion to warrant administering field sobriety and breath tests).

**{¶39}** Considering the totality of the circumstances, the facts in the instant case support the trial court's finding that the information gathered by Sgt. Schorr failed to give him probable cause to arrest.

**{¶40}** At the time of arrest, Sgt. Schorr did not have knowledge from a reasonably trustworthy source of facts and circumstances sufficient to cause a prudent person to believe that Appellant was driving under the influence of alcohol. *Medcalf,* 111 Ohio App.3d at 147, 675 N.E.2d 1268. Like *Martin*, *supra*, Appellant had a slight odor of alcohol and admitted to drinking. As we stated in *Martin*, it follows that there would be an odor of alcohol with an admission of drinking. (*Martin* at 19). When asked, Appellant agreed to perform the Field Sobriety Tests. Appellant was polite and cooperative and followed instructions. Appellant's behavior did not show indicia of impairment.

**{¶41}** Sgt. Schorr admitted on cross-examination that his reasoning for ordering Appellant out of his vehicle and placing him under arrest was based solely on his admission to having had a couple of drinks and his delayed responses. (Supp. T. at 51).

Because of a lack of indicia at the time of arrest, we agree with the trial court that Sgt. Schorr lacked probable cause to arrest Appellant for OVI.

**{¶42}** Accordingly, the trial court's determination that the officers did not have probable cause to arrest Appellant is supported by competent, credible evidence, and therefore the trial court properly granted Appellant's motion to suppress.

**{¶43}** The state's sole assignment of error is overruled.

**{¶44}** For the forgoing reasons, the judgment of the Lancaster Municipal Court, Fairfield County, Ohio, is affirmed.

By: Wise, P. J.

Baldwin, J., and

King, J., concur.

JWW/kw 1112